97 Cal.Rptr.2d 914 (2000)
23 Cal.4th 789
3 P.3d 311
The PEOPLE, Plaintiff and Respondent,
v.
Antonio Marcos ROBLES, Defendant and Appellant.
No. S072243.
Supreme Court of California.
July 17, 2000.
*916 Stephen Gilbert, under appointment by the Supreme Court, Santa Monica, for Defendant and Appellant.
Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster, Jeffrey J. Koch, Larissa Karpovics Hendren and Michael Murphy, Deputy Attorneys General, for Plaintiff and Respondent.
*915 BAXTER, J.
Prior to trial, defendant moved to suppress evidence obtained in the garage of his residence as a result of a warrantless search and seizure by police. The trial court denied the motion because defendant's brother, with whom defendant lived, had agreed to submit his person and property to warrantless police searches and seizures as a condition of probation. It is undisputed that the officers involved were unaware of the brother's probation condition when they obtained the challenged evidence. We conclude that defendant's Fourth Amendment rights were violated and that his suppression motion should have been granted.

FACTUAL AND PROCEDURAL BACKGROUND
Rolando Sanchez's car was stolen on or about October 13, 1995. Ten days later, Sanchez saw defendant drive it into a store parking lot. Defendant put gasoline in the car and drove it away.
Sanchez called his sister and asked her to notify the police. Meanwhile, he drove around the area and saw his car parked in an alley. He also saw defendant with two other people. When Sanchez subsequently returned with the police to the scene, defendant was present but the car was no longer in view. Sanchez identified defendant to police as the man who had driven his car.
While defendant was detained by police, Officer Ryan Stack ascertained the car's description and license plate number and began searching the city alley where it had been spotted minutes earlier. He observed a series of garages bordering the alley, unmarked by any address or apartment number, but did not see the car.
Knowing that defendant resided in unit C of the apartment complex (apartment C) *917 to which the unmarked garages were connected, Stack approached a closed garage that had an aluminum door with a rip measuring one to two inches. Stack looked through the rip without a flashlight and saw a car with a license plate number matching that of Sanchez's stolen car.
Stack then went to apartment C, but no one answered his knock. He returned to the alley and opened the unlocked garage door. Although defendant was detained nearby, his consent to enter the garage was not sought.
Once inside the garage, the officers observed that the car's ignition and steering column had been damaged in a manner that would permit the car to be started without a key. They also saw a can of blue spray paint in the garage and noticed that the car's trunk lock was damaged, covered by tape and painted blue. A forensic specialist was called to the scene, and a partial palm print was lifted from the interior of the car. The palm print matched defendant's left palm.
The next day, another police officer learned that defendant's brother, Armando, also lived in apartment C and apparently shared authority over the garage. Several days later, the police discovered that Armando was on probation and subject to a probation search clause.
Defendant moved to suppress all evidence seized from the garage, including the evidence that Sanchez's car was recovered therefrom, the evidence of the damage to the ignition and trunk of the car, the spray paint evidence, and the palm print evidence gleaned from the car's interior. The trial court denied the motion, finding all of it admissible due to Armando's probation search condition. At trial, the prosecution presented the evidence as part of its case-in-chief. Defendant was convicted and sentenced to a total of seven years in state prison, five years for the car theft (Veh.Code, § 10851, subd. (a)) and one year each for two prior prison terms (Pen.Code, § 667.5, subd. (b)).
The Court of Appeal reversed. It concluded that defendant's Fourth Amendment rights had been violated and that the challenged evidence was not otherwise admissible under the inevitable discovery doctrine.

DISCUSSION
We granted review to consider two questions. First, may the probation search condition of defendant's brother be used to validate the warrantless search of the garage, where the police did not know of the condition at the time of the search?[1] Second, is the challenged evidence admissible under the doctrine of inevitable discovery? We address these issues in order.

A. Armando's Probation Search Condition
Under California law, issues relating to the suppression of evidence derived from police searches and seizures must be reviewed under federal constitutional standards. (People v. Ayala (2000) 23 Cal.4th 225, 254-255, 96 Cal.Rptr.2d 682; People v. Bradford (1997) 15 Cal.4th 1229, 1291, 65 Cal.Rptr.2d 145, 939 P.2d 259.)
The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures" by police officers and other government officials. (U.S. Const., 4th *918 Amend.) The touchstone of Fourth Amendment analysis is whether a person has a constitutionally protected reasonable expectation of privacy, that is, whether he or she has manifested a subjective expectation of privacy in the object of the challenged search that society is willing to recognize as reasonable. (California v. Ciraolo (1986) 476 U.S. 207, 211, 106 S.Ct. 1809, 90 L.Ed.2d 210; In re Tyrell J. (1994) 8 Cal.4th 68, 83, 32 Cal. Rptr.2d 33, 876 P.2d 519 (Tyrell J.), cert, den. sub nom. Tyrell J. v. California (1995) 514 U.S. 1068, 115 S.Ct. 1701, 131 L.Ed.2d 563; see People v. Ayala, supra, 23 Cal.4th at p. 255, 96 Cal.Rptr.2d 682.)
"[P]rivate residences are places in which the individual normally expects privacy free of governmental intrusion not authorized by a warrant, and that expectation is plainly one that society is prepared to recognize as justifiable." (United States v. Karo (1984) 468 U.S. 705, 714, 104 S.Ct. 3296, 82 L.Ed.2d 530; see Steagald v. United States (1981) 451 U.S. 204, 211-212, 101 S.Ct. 1642, 68 L.Ed.2d 38; Payton v. New York (1980) 445 U.S. 573, 589-590, 100 S.Ct. 1371, 63 L.Ed.2d 639.) Likewise, a garage that is attached or adjacent to a home may give rise to a legitimate expectation of privacy therein. (E.g., Taylor v. United States (1932) 286 U.S. 1, 5-6, 52 S.Ct. 466, 76 L.Ed. 951; People v. Dugan (1980) 102 Mich.App. 497, 504-506, 302 N.W.2d 209, 212.) Under the Fourth Amendment, a warrantless search of such an area is unreasonable per se unless it falls within a recognized exception to the warrant requirement, for example, where consent to the search has been given. (Schneckloth v. Bustamonte (1973) 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854; People v. Bravo (1987) 43 Cal.3d 600, 609, 238 Cal.Rptr. 282, 738 P.2d 336.)
In California, a person may validly consent in advance to warrantless searches and seizures in exchange for the opportunity to avoid serving a state prison term. (People v. Bravo, supra, 43 Cal.3d at p. 608, 238 Cal.Rptr. 282, 738 P.2d 336; People v. Mason (1971) 5 Cal.3d 759, 764-766, 97 Cal.Rptr. 302, 488 P.2d 630.) Warrantless searches are justified in the probation context because they aid in deterring further offenses by the probationer and in monitoring compliance with the terms of probation. (People v. Mason, supra, 5 Cal.3d at pp. 763-764, 97 Cal. Rptr. 302, 488 P.2d 630; see People v. Bravo, supra, 43 Cal.3d at p. 610, 238 Cal.Rptr. 282, 738 P.2d 336.) By allowing close supervision of probationers, probation search conditions serve to promote rehabilitation and reduce recidivism while helping to protect the community from potential harm by probationers. (See Griffin v. Wisconsin (1987) 483 U.S. 868, 875, 107 S.Ct. 3164, 97 L.Ed.2d 709 [upholding a warrantless probation search under a state regulation requiring reasonable grounds for searches].)
We recently relied upon the "common authority" theory of consent in recognizing that if persons live with a probationer, shared areas of their residence may be searched based on the probationer's advance consent. (People v. Woods (1999) 21 Cal.4th 668, 675-676, 88 Cal.Rptr.2d 88, 981 P.2d 1019, cert. den. sub nom. Woods v. California (2000) 529 U.S. 1023, 120 S.Ct. 1429, 146 L.Ed.2d 319 [no dissenting votes noted]; see generally United States v. Matlock (1974) 415 U.S. 164,171 & fn. 7, 94 S.Ct. 988, 39 L.Ed.2d 242.) Here it is undisputed that defendant's brother, who had agreed to warrantless searches of his "property, including any residence premise]" as a condition of probation, lived with defendant in apartment C on the day police entered the garage.[2] The People, relying principally on People v. Woods, supra, 21 Cal.4th 668, 88 Cal.Rptr.2d 88, *919 981 P.2d 1019, contend that Armando's search condition furnished legal justification for the warrantless search and seizure, notwithstanding the searching officers' ignorance of the condition at the time of their actions. This argument proves too much.
In People v. Woods, supra, 21 Cal.4th 668, 88 Cal.Rptr.2d 88, 981 P.2d 1019, two persons who resided with a probationer challenged the constitutionality of a warrantless search of their home by a police officer who relied on the authority of a known search clause to seek incriminating evidence against another party residing in the home. (21 Cal.4th at pp. 672-673, 88 Cal.Rptr.2d 88, 981 P.2d 1019.) In evaluating the legality of the search, we found it appropriate to apply an objective standard. In the context of probation searches, we explained, the question is whether the circumstances, viewed objectively, show a proper probationary justification for an officer's search; if they do, then the officer's subjective motivations with respect to a third party resident do not render the search invalid.[3] (People v. Woods, supra, 21 Cal.4th at pp. 678-681, 88 Cal.Rptr.2d 88, 981 P.2d 1019 [relying upon Whren v. United States (1996) 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 and other Supreme Court decisions]; cf. Bond v. United States (2000) 529 U.S. 334, 338, 120 S.Ct. 1462, 1465, 146 L.Ed.2d 365 [border agent's state of mind properly disregarded in evaluating whether his physical manipulation of a bus passenger's bag violated the Fourth Amendment].) We concluded there that, regardless of the searching officer's ulterior motives, the circumstances presented ample justification for a search pursuant to the probation clause at issue because the facts known to the officer showed a possible probation violation. (People v. Woods, supra, 21 Cal.4th at p. 681, 88 Cal.Rptr.2d 88, 981 P.2d 1019.)
Contrary to the People's argument, People v. Woods, supra, 21 Cal.4th 668, 88 Cal.Rptr.2d 88, 981 P.2d 1019, does not support the proposition that police officers may lawfully enter a residential premises, without a warrant and without any awareness of a resident's probation search condition, to indiscriminately search for and seize evidence of suspected criminal wrongdoing. As our decisions indicate, searches that are undertaken pursuant to a probationer's advance consent must be reasonably related to the purposes of probation. (See People v. Bravo, supra, 43 Cal.3d at p. 610, 238 Cal.Rptr. 282, 738 P.2d 336; People v. Mason, supra, 5 Cal.3d at p. 764, 97 Cal.Rptr. 302, 488 P.2d 630.) Significantly, a search of a particular residence cannot be "reasonably related" to a probationary purpose when the officers involved do not even know of a probationer who is sufficiently connected to the residence. Moreover, if officers *920 lack knowledge of a probationer's advance consent when they search the residence, their actions are wholly arbitrary in the sense that they search without legal justification and without any perceived limits to their authority. (Cf. Tyrell J., supra, 8 Cal.4th at p. 87, 32 Cal.Rptr.2d 33, 876 P.2d 519 [even though the probationer may not reasonably expect freedom from warrantless searches, officers' advance knowledge of a search condition nonetheless helps to ensure that a resulting search is not conducted for reasons unrelated to the purposes of probation]; People v. Bravo, supra, 43 Cal.3d at p. 606, 238 Cal.Rptr. 282, 738 P.2d 336 [the scope of a permissible probation search is determined by reference to the probation order].) People v. Woods, which concerned the legality of a home search premised upon a known probation condition, does not suggest otherwise.[4]
As the People correctly note, Tyrell J., supra, 8 Cal.4th 68, 32 Cal.Rptr.2d 33, 876 P.2d 519, expressly declined to impose a strict requirement that the searching officer must always have advance knowledge of a search condition. (Id. at pp. 86-87, 32 Cal.Rptr.2d 33, 876 P.2d 519.) That decision, however, fails to aid the People in the situation presented here.
In Tyrell J., we considered a minor's efforts to suppress evidence of marijuana found on his person by a police officer who, unaware of the minor's probation search condition, detained and pat-searched the minor. Although the officer had acted without probable cause and without a warrant, we concluded, based on the circumstances surrounding the search, that the minor's expectation of privacy was "not one society is prepared to recognize as reasonable and legitimate" for purposes of the Fourth Amendment.[5] (Tyrell J., supra, 8 Cal.4th at p. 86, 32 Cal.Rptr.2d 33, 876 P.2d 519; see also People v. Viers (1991) 1 Cal.App.4th 990, 993, 2 Cal. Rptr.2d 667 [same conclusion in case involving an adult probationer].) In particular, we observed that the minor, being subject to a search condition, presumably was aware that "any police officer, probation officer, or school official could at any time stop him on the street, at school, or even enter his home, and ask that he submit to a warrantless search." (Tyrell J., supra, 8 Cal.4th at p. 86, 32 Cal.Rptr.2d 33, 876 P.2d 519.) Additionally, there was no indication the minor was led to believe that only police officers who were aware of the search condition would execute it; nor could he reasonably have believed the searching officer would not do so, for he did know whether the officer was aware of the condition. (Ibid.)
The logic of Tyrell J. cannot be stretched to vitiate the illegality of the police action here. Even though a person subject to a search condition has a severely diminished expectation of privacy over his or her person and property, there is no doubt that those who reside with such a person enjoy measurably greater privacy expectations in the eyes of society. For example, those who live with a probationer maintain normal expectations of privacy over their persons. In addition, they retain valid privacy expectations in residential areas subject to their exclusive access or control, so long as there is no basis for officers to reasonably believe the probationer has authority over those areas. *921 (See Illinois v. Rodriguez (1990) 497 U.S. 177, 188-189, 110 S.Ct. 2793, 111 L.Ed.2d 148; People v. Woods, supra, 21 Cal.4th at p. 682, 88 Cal.Rptr.2d 88, 981 P.2d 1019.) That persons under the same roof may legitimately harbor differing expectations of privacy is consistent with the principle that one's ability to claim the protection of the Fourth Amendment depends upon the reasonableness of his or her individual expectations. (See Minnesota v. Carter (1998) 525 U.S. 83, 88-90, 119 S.Ct. 469, 472-473, 142 L.Ed.2d 373; Steagald v. United States, supra, 451 U.S. at pp. 218-219, 101 S.Ct. 1642.)
It is true that if persons live with a probationer, common or shared areas of their residence may be searched by officers aware of an applicable search condition. (People v. Woods, supra, 21 Cal.4th 668, 88 Cal.Rptr.2d 88, 981 P.2d 1019; Russi v. Superior Court (1973) 33 Cal. App.3d 160, 108 Cal.Rptr. 716.[6]) Critically, however, cohabitants need not anticipate that officers with no knowledge of the probationer's existence or search condition may freely invade their residence in the absence of a warrant or exigent circumstances. Thus, while cohabitants have no cause to complain of searches that are reasonably and objectively related to the purposes of probationfor example, when routine monitoring occurs (see Russi v. Superior Court, supra, 33 Cal.App.3d at p. 166, 108 Cal.Rptr. 716) or when facts known to the police indicate a possible probation violation that would justify action pursuant to a known search clause (People v. Woods, supra, 21 Cal.4th at pp. 680-681, 88 Cal.Rptr.2d 88, 981 P.2d 1019)they may legitimately challenge those searches that are not. Tyrell J., which focused specifically on the reasonableness of a probationer's privacy expectations, does not indicate otherwise.
Moreover, it must be remembered that probation is an "important aspect[] of the state's penal system," the "optimum successful functioning" of which "is of compelling public interest." (Russi v. Superior Court, supra, 33 Cal.App.3d at p. 168, 108 Cal.Rptr. 716.) With respect to the goals of probation, society would be hard pressed not to "`recognize as legitimate'" (New Jersey v. T.L.O. (1985) 469 U.S. 325, 338, 105 S.Ct. 733, 83 L.Ed.2d 720) third party privacy expectations concerning the illegality of warrantless searches that bear no reasonable relation to the purposes of probation. Many law-abiding citizens might choose not to open their homes to probationers if doing so were to result in the validation of arbitrary police action. If increased numbers of probationers were not welcome in homes with supportive environments, higher recidivism rates and a corresponding decrease in public safety may be expected, both of which would detract from the "optimum successful functioning" of the probation system.
Finally, we observe the principal purpose of the exclusionary rule "`is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures.'" (Illinois v. Krull (1987) 480 U.S. 340, 347, 107 S.Ct. 1160, 94 L.Ed.2d 364, quoting United States v. Calandra (1974) 414 U.S. 338, 347, 94 S.Ct. 613, 38 L.Ed.2d 561.) In Tyrell J., we concluded that dispensing with a strict "knowledge-first" rule would not encourage law enforcement officials to engage in warrantless searches of juveniles because they would be "[taking] the chance" that if the target of a search is not subject to a search condition, any contraband found will be inadmissible in court. (Tyrell J., supra, 8 Cal.4th at p. 89, 32 Cal.Rptr.2d *922 33, 876 P.2d 519.) Although police officers therefore have sufficient incentive to avoid an improper search of a person (ibid.), residential searches present an altogether different situation.
Notably, residences frequently are occupied by several people living together, including immediate family members and perhaps other relatives or friends, as well as guests. Allowing the People to validate a warrantless residential search, after the fact, by means of showing a sufficient connection between the residence and any one of a number of occupants who happens to be subject to a search clause, would encourage the police to engage in facially invalid searches with increased odds that a justification could be found later. It also would create a significant potential for abuse since the police, in effect, would be conducting searches with no perceived boundaries, limitations, or justification. (See People v. Bravo, supra, 43 Cal.3d at p. 606, 238 Cal.Rptr. 282, 738 P.2d 336.) The potential for abuse, with its consequent impact on the citizenry, is especially heightened in high crime areas where police might suspect probationers to live. Thus, while society generally has an interest in having all probative evidence before the court, in circumstances such as these a knowledge-first requirement is appropriate to deter future police misconduct and to effectuate the Fourth Amendment's guarantee against unreasonable searches and seizures. (See Illinois v. Krull, supra, 480 U.S. at p. 347, 107 S.Ct. 1160.)
For all of the foregoing reasons, we conclude the police conduct here transgressed constitutional limits. By entering apartment C's garage with no warrant and no awareness of Armando's advance consent to probation searches, the police violated defendant's reasonable expectations of privacy under the Fourth Amendment. Although the advance consent might have furnished a legitimate basis for the search and seizure had the officers known of it at the time they acted, the mere fact of its existence does not vitiate the unlawfulness of what happened here.

B. Inevitable Discovery
Under the inevitable discovery doctrine, illegally seized evidence may be used where it would have been discovered by the police through lawful means. As the United States Supreme Court has explained, the doctrine "is in reality an extrapolation from the independent source doctrine: Since the tainted evidence would be admissible if in fact discovered through an independent source, it should be admissible if it inevitably would have been discovered." (Murray v. United States (1988) 487 U.S. 533, 539, 108 S.Ct. 2529, 101 L.Ed.2d 472.) The purpose of the inevitable discovery rule is to prevent the setting aside of convictions that would have been obtained without police misconduct. (Nix v. Williams (1984) 467 U.S. 431, 443, fn. 4, 104 S.Ct. 2501, 81 L.Ed.2d 377.) The burden of establishing that illegally seized evidence is admissible under the rule rests upon the government.[7] (People v. Superior Court (Tunch) (1978) 80 Cal.App.3d 665, 682, 145 Cal.Rptr. 795; see Nix v. Williams, supra, 467 U.S. at p. 444, 104 S.Ct. 2501.)
In urging us to affirm defendant's conviction, the People argue the evidence obtained during the warrantless search and seizure was admissible under the inevitable discovery doctrine because a warrant could have been obtained for the garage based upon the initial plain view sighting *923 of the car therein,[8] "had the police officers thought to have done so."
Ultimately, however, the People agree with defendant that, in the absence of exigent circumstances, a police officer is required to obtain a warrant to enter a residence even if contraband is clearly displayed in a window and the officer observes the contraband from a place in which he or she has a right to be. (See Horton v. California (1990) 496 U.S. 128, 137 & fn. 7, 110 S.Ct. 2301, 110 L.Ed.2d 112; People v. LeBlanc (1997) 60 Cal. App.4th 157, 167, 70 Cal.Rptr.2d 195.) The People also agree the inevitable discovery doctrine would not serve to excuse a warrantless entry of a residence under the foregoing circumstances. Further, the People admit "a garage could be of such close proximity to a residence as to be considered part of the residence," so as to bar the doctrine's application if officers illegally enter the garage without a warrant to seize contraband plainly visible from outside. Having acceded to the foregoing, the People make the argument that the requisite proximity between the residence and the garage here "apparently" was lacking. But the People provide no citations to facts in the record that might support the rather tentative proximity claim. Nor is any legal authority supporting such argument offered.
Given these concessions and omissions, we conclude the People have not met their burden of legally and factually demonstrating that the inevitable discovery doctrine is properly applied in this case. Accordingly, defendant's conviction may not stand.

DISPOSITION
The judgment of the Court of Appeal, which reversed the judgment of the trial court with directions to grant the motion to suppress, is affirmed.
GEORGE, C.J., WERDEGAR, and CHIN, JJ., concur.
Concurring Opinion by MOSK, J.
I concur in the judgment.
In this cause, as in People v. Woods (1999) 21 Cal.4th 668, 88 Cal.Rptr.2d 88, 981 P.2d 1019, less than a year ago, we address an issue involving the Fourth Amendment to the United States Constitution with its prohibition against unreasonable searches and seizures, on the one side, and the consent to searches and seizures that is demanded of a probationer as a condition of his probation under the law of the State of California, on the other.
Here, as in Woods, a majority of the court has attempted to resolve the interplay between the Fourth Amendment and state law on a probationer's consent to searches and seizures by making adjustments to the former. In spite of their efforts, they have failed to arrive at an altogether satisfying result.
For my part, I would leave the Fourth Amendment alone, and simply declare what I believe to be implied under state law, namely, that a probationer's consent to searches and seizures is limited to such as may be conducted for the purpose of ensuring his compliance with his probation and its terms.
Concurring Opinion by KENNARD, J.
In this criminal case, the prosecution seeks to justify the warrantless police search of defendant's garage and the warrantless seizure of evidence in the garage on the ground that defendant's brother, who resided with defendant, had agreed as a condition of probation to submit to warrantless searches. The majority rejects this argument, concluding that the warrantless search of defendant's garage violated the protection of the federal Constitution's Fourth Amendment against unreasonable *924 searches and seizures and that the evidence seized in that search should have been excluded at trial.
The majority reaches this conclusion by distinguishing, not without some effort, two decisions by this court from which I dissented. One of themIn re Tyrell J. (1994) 8 Cal.4th 68, 32 Cal.Rptr.2d 33, 876 P.2d 519held that police may rely on a probation search condition of which they are unaware to justify an otherwise illegal warrantless search of the probationer. The otherPeople v. Woods (1999) 21 Cal.4th 668, 88 Cal.Rptr.2d 88, 981 P.2d 1019held that a search condition may be used to justify a search whose purpose is to gather evidence against a person not subject to the search condition.
I concur in the majority's conclusion, but reach that result by following the different and simpler path marked by my previous dissents. For two independent reasons, the search here violated the Fourth Amendment. First, the search was illegal because the police officers who searched defendant's garage were completely unaware of the brother's probation search condition. As I explained in my dissent in In re Tyrell J., supra, 8 Cal.4th 68, 90, 32 Cal.Rptr.2d 33, 876 P.2d 519, under the Fourth Amendment the police may not rely on a probation search condition of which they are unaware to justify a warrantless search. To permit them to do so, thereby encouraging them to "search first and ask questions later," is completely at odds with the Fourth Amendment's purpose of protecting persons and their possessions against unreasonable government intrusion. (Tyrell J., at p. 98, 32 Cal. Rptr.2d 33, 876 P.2d 519 (dis.opn. of Kennard, J.).)
Second, the search was illegal because the purpose of the search was to gather evidence against defendant, not his brother who alone was subject to the probation search condition. As I explained in my dissent in People v. Woods, supra, 21 Cal.4th 668, 682, 88 Cal.Rptr.2d 88, 981 P.2d 1019, the Fourth Amendment does not permit "police to use a probation search condition, which authorizes the warrantless, suspicionless search of a probationer, as authority to search a home for the express purpose of seeking evidence against nonprobationers who share the residence with the probationer."
Concurring Opinion by BROWN, J.
I concur in the determination to affirm the Court of Appeal's judgment reversing the denial of defendant's suppression motion.
I write separately in part because the majority concludes its discussion regarding Armando Robles's probation search condition by speculating that "the advance consent might have furnished a legitimate basis for the search and seizure had the officers known of it at the time they acted...." (Maj. opn., ante, 97 Cal.Rptr.2d at p. 922, 3 P.3d at p. 318.) For the reasons set forth in my dissenting opinion in People v. Woods (1999) 21 Cal.4th 668, 683-696, 88 Cal.Rptr.2d 88, 981 P.2d 1019, I would dispute the constitutional viability of this conclusion.
I am also prompted by the remark of respondent's counsel at oral argument that upholding the instant search simply follows from the "logical application" of cases decided by this court. In People v. Woods, a majority approved the warrantless search of the defendants' bedroom based upon the probation search condition of a cotenant, applying a third party consent rationale. (People v. Woods, supra, 21 Cal.4th at pp. 675-676, 88 Cal.Rptr.2d 88, 981 P.2d 1019.) In In re Tyrell J. (1994) 8 Cal.4th 68, 89, 32 Cal.Rptr.2d 33, 876 P.2d 519 (Tyrell J.), the court upheld the search of a juvenile probationer even though the officer did not know he was subject to a search condition, because the juvenile had no reasonable expectation of privacy under the circumstances. Since Armando had consented to *925 a search of their residence when he accepted probation on that condition, the Attorney General argues defendant assumed the risk of a third party consent and had no reasonable expectation of privacy. The officer's ignorance of the condition, or even of Armando's probationary status, was thus immaterial. QED
The Attorney General's assessment of the confluence of People v. Woods, supra, 21 Cal.App.4th 668, 88 Cal.Rptr.2d 88, 981 P.2d 1019, and Tyrell J. is as syllogistically accurate as it is constitutionally shocking. It also speaks volumes to how far this court's Fourth Amendment methodology has strayed from the core rationale of the guarantee against unreasonable searches and seizures.
The analytical vice of Tyrell J. is the majority's assumption that the two-part inquiry into the defendant's reasonable expectation of privacy derived from Justice Harlan's concurring opinion in Katz v. United States (1967) 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576,[1] serves as an all-purpose or universally applicable template for assessing Fourth Amendment challenges. But it does not. Decisions in which the United States Supreme Court has utilized the Katz approach have generally concerned whether the place searched or the manner in which police officers conducted the search violated the defendant's right to be free of unreasonable searches and seizures.[2] (See also Rakas v. Illinois, supra, 439 U.S. at p. 143, 99 S.Ct. 421 [finding Katz "provides guidance in defining the scope of the interest protected by the Fourth Amendment" for purposes of determining whether defendant may contest search or seizure]; see generally 1 LaFave, Search and Seizure (3d ed.1996) § 2.1, pp. 375-395.) In some cases, the issue distilled to the fundamental query whether law enforcement had even conducted a search. (See 1 LaFave, Search and Seizure, supra, § 2.2, pp. 395-464.)
For example, the seminal decision of Katz v. United States, supra, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, involved recording of the defendant's side of a conversation in a public telephone booth by an electronic listening device. The government contended this did not amount to a search because no physical intrusion occurred and the defendant did not occupy a "`constitutionally protected area.'" (Id. at p. 351, 88 S.Ct. 507.) The court rejected these arguments with the now-familiar observation that "the Fourth Amendment protects people, not places." (Ibid.) To this observation, Justice Harlan rejoined, "The question, however, is what protection it affords to those people. Generally, as *926 here, the answer to that question requires reference to a `place.'" (Id. at p. 361, 88 S.Ct. 507 (cone. opn. of Harlan, J.).) His "twofold requirement" that currently serves as the standard analytical rubric immediately followed this statement and must be understood in light thereof. (Ibid.)
Tyrell J., supra, 8 Cal.4th 68, 32 Cal. Rptr.2d 33, 876 P.2d 519, did not involve the search of a place but of the defendant's person. In the latter circumstance, the Supreme Court resolves a Fourth Amendment challenge not by applying the Katz two-part inquiry but by analyzing the question as one of reasonableness. (See, e.g., Terry v. Ohio (1968) 392 U.S. 1, 15-23, 88 S.Ct. 1868, 20 L.Ed.2d 889.) Katz has no relevance to the search of a person because, as a general proposition, society is always "prepared to recognize as `reasonable'" (Katz v. United States, supra, 389 U.S. at p. 361, 88 S.Ct. 507 (cone. opn. of Harlan, J.)) an expectation of privacy in one's person. While Katz "provides guidance in defining the scope of the interest protected by the Fourth Amendment" (Rakas v. Illinois, supra, 439 U.S. at p. 143, 99 S.Ct. 421), this reference is to the spatial scope: "[T]he Court in Katz held that capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." (Ibid., italics added.)
This is not to say that consideration of a defendant's expectation of privacy has no bearing upon whether a search of the person was reasonable. (See, e.g., Terry v. Ohio, supra, 392 U.S. at p. 9, 88 S.Ct. 1868.) The flaw of Tyrell J. is that it puts the reasonable expectation of privacy cart before the horse. (Cf. Lorenzana v. Superior Court (1973) 9 Cal.3d 626, 637-638, 108 Cal.Rptr. 585, 511 P.2d 33.) Tyrell J. involved an exception to the warrant requirement: the juvenile probationer was subject to a search condition and knew he could be searched without probable cause. As with any exception, the reasonableness of a search predicated on such a condition must be measured in relation to the rationale for excusing compliance with Fourth Amendment strictures. (See generally People v. Woods, supra, 21 Cal.4th 668, 692-696, 88 Cal.Rptr.2d 88, 981 P.2d 1019 (dis. opn. of Brown, J.).) The defendant's reasonable expectation of privacy may be factored into one or more of several considerations, such as whether the rationale actually supports dispensing with the warrant requirement. (See, e.g., Marshall v. Barlow's, Inc. (1978) 436 U.S. 307, 312-313, 98 S.Ct. 1816, 56 L.Ed.2d 305.) It does not define the inquiry into the reasonableness of the search, however, because that inquiry looks first to the officer's conduct under the circumstances. When the prosecution relies on a probationer's search condition to justify the reasonableness of a warrantless search, the officer must have acted pursuant to that justification, which he can only reasonably do if he has knowledge of the condition. (See Tyrell J., supra, 8 Cal.4th 68, 97, 32 Cal. Rptr.2d 33, 876 P.2d 519 (dis. opn. of Kennard, J.); People v. Bravo (1987) 43 Cal.3d 600, 610, 238 Cal.Rptr. 282, 738 P.2d 336; In re Anthony S. (1992) 4 Cal.App.4th 1000, 1004, 6 Cal.Rptr.2d 214.) Any other course is an open invitation to abuse. (Cf. Terry v. Ohio, supra, 392 U.S. at pp. 14-15, 88 S.Ct. 1868.)
The reasoning of Tyrell J. has also not escaped criticism among the commentators: "Whatever might be concluded about the necessity to permit the police to play some role in the enhanced scrutiny to be directed at those on probation and parole, quite obviously there is no rational basis upon which to uphold otherwise illegal police searches of persons only later determined to be on probation or parole.... Regrettably, that eminently sound position *927 was later abandoned in In re Tyrell J. on the bizarre reasoning that a probationer who knows that he is subject to `a valid search condition' to his release consequently `does not have a reasonable expectation of privacy over his person or property' vis-à-vis any search by anyone, including a search by a police officer unaware of the probationer status! As the dissent in Tyrell J. aptly noted, that strange conclusion, without precedent in any jurisdiction, gives police an incentive to make searches even without probable cause because, should it turn out that the suspect is a probationer, the evidence will be admissible nonetheless." (4 LaFave, Search and Seizure, supra, § 10.10(e), pp. 791-792, fns. omitted; see also Comment, Fourth Amendment Protection for Juvenile Probationers in California, Slim or None?: In re Tyrell J. (1995) 22 Hastings Const. L.Q. 893.)
By succumbing to the trap of the facile formula that beguilingly substitutes for critical analysis, the court in Tyrell J. reached a constitutionally suspect conclusion. For that reason, we should avoid endorsing, and thus perpetuating, its dubious reasoning.
NOTES
[1] In this court, the People concede there was an illegal search and seizure unless it is determined the police acted permissibly in light of Armando's probation search condition. Moreover, the People do not argue that any improper admission of evidence was harmless beyond a reasonable doubt under Chapman v. California (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.
[2] To the extent the People suggest that the subject garage was not part of the "residence premise[s]" due to a lack of proximity, the point is made without citation to record references or legal authority. Since the People make no meaningful effort to establish the point, we shall assume that the garage, which Officer Stack described as being "connected to the apartment complex" in which defendant and his brother lived, was part of the residence premises. We shall also assume, giving due deference to the implicit factual finding of the trial court, that defendant's brother shared authority over the garage. (See People v. Woods, supra, 21 Cal.4th at p. 673, 88 Cal.Rptr.2d 88, 981 P.2d 1019.)
[3] We observed that different officers presented with the same facts may harbor varying motivations in deciding to search a probationer's house pursuant to a known search condition; thus, focusing on subjective intent would likely lead to disparate results in factually comparable situations. (People v. Woods, supra, 21 Cal.4th at pp. 680-681, 88 Cal. Rptr.2d 88, 981 P.2d 1019.) Moreover, since officers who rely on a probation clause must confine the scope of their search to the terms articulated in the clause and to those areas of the residence over which they reasonably believe the probationer has access or control, we concluded "there is little to be advanced by validating a search merely upon the searching officer's ability to convincingly articulate the proper subjective motivation for his or her actions." (Id. at p. 681, 88 Cal. Rptr.2d 88, 981 P.2d 1019.)
[4] Footnote 6 of People v. Woods, supra, 21 Cal.4th at page 679, 88 Cal.Rptr.2d 88, 981 P.2d 1019, lends no support to the People's position. It merely acknowledged the potential for the type of argument advanced here, while stating explicitly that the opinion addressed only the factual scenario presented in that case. (Ibid.)
[5] Initially we determined the search could not be validated on an advance consent theory (see People v. Bravo, supra, 43 Cal.3d 600, 238 Cal.Rptr. 282, 738 P.2d 336), for a juvenile, unlike an adult, has no choice whether or not to accept a condition of probation that subjects him or her to a warrantless search. (Tyrell J., supra, 8 Cal.4th at pp. 81-83, 32 Cal.Rptr.2d 33, 876 P.2d 519.)
[6] To the extent dictum in Russi v. Superior Court, supra, 33 Cal.App.3d 160, 108 Cal. Rptr. 716, suggested that an officer's subjective intent could invalidate a search undertaken pursuant to a probation search clause, it has, of course, been implicitly disapproved by People v. Woods, supra, 21 Cal.4th 668, 88 Cal.Rptr.2d 88, 981 P.2d 1019.
[7] Although the inevitable discovery doctrine was not presented to the trial court below, it may be applied on appeal if the factual basis for the theory is fully set forth in the record. (Green v. Superior Court (1985) 40 Cal.3d 126, 137-138, 219 Cal.Rptr. 186, 707 P.2d 248; see People v. Clark (1993) 5 Cal.4th 950, 993, fn. 19, 22 Cal.Rptr.2d 689, 857 P.2d 1099.)
[8] The People claim the stolen car was openly visible through a hole in the garage door. The trial court indicated disagreement with this claim, but ruled the search and seizure were authorized by Armando's probation condition.
[1] "[F]irst [whether] a person [has] exhibited an actual (subjective) expectation of privacy and, second, [whether] the expectation be one that society is prepared to recognize as `reasonable.'" (Katz v. United States, supra, 389 U.S. at p. 361, 88 S.Ct. 507 (cone. opn. of Harlan, J.).)
[2] See, e.g., Bond v. United States (2000) 529 U.S. 334, 338, 120 S.Ct. 1462, 1465, 146 L.Ed.2d 365 (manipulation of defendant's carry-on luggage located in overhead storage space); Minnesota v. Carter (1998) 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (observations of defendants packaging drugs in apartment they only momentarily occupied for that purpose); Minnesota v. Olson (1990) 495 U.S. 91, 95-96, 110 S.Ct. 1684, 109 L.Ed.2d 85 (warrantless arrest of overnight guest); California v. Greenwood (1988) 486 U.S. 35, 39, 108 S.Ct. 1625, 100 L.Ed.2d 30 (search of defendant's trash container that had been placed at curb for garbage collection); O'Connor v. Ortega (1987) 480 U.S. 709, 716, 107 S.Ct. 1492, 94 L.Ed.2d 714 (search of defendant's workplace); California v. Ciraolo (1986) 476 U.S. 207, 211, 106 S.Ct. 1809, 90 L.Ed.2d 210 (police observation of defendant's fenced backyard from airplane 1,000 feet overhead); Rowlings v. Kentucky (1980) 448 U.S. 98, 104, 100 S.Ct. 2556, 65 L.Ed.2d 633 (search of companion's purse); Smith v. Maryland (1979) 442 U.S. 735, 739-741, 99 S.Ct. 2577, 61 L.Ed.2d 220 (use of pen register to record defendant's outgoing calls); Rakas v. Illinois (1978) 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (search of glove compartment of car in which defendants were passengers).