Filed 3/29/16  P. v. Superior Court (Katz) CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN MATEO COUNTY,<br><br>Respondent;<br><br>ZACHARY KATZ,<br><br>Real Party in Interest. | A146834<br><br>(San Mateo County<br> Super. Ct. No. SC081375A) |

In this prosecution for vehicular manslaughter, driving under the influence causing great bodily injury, driving with a blood alcohol level of .08 or higher causing great bodily injury, and driving on the wrong side of a highway causing death or great bodily injury (Pen. Code, § 191.5, subd. (a); Veh. Code, §§ 23153, subd. (a) & (b), 21651, subd. (c)), real party in interest Zachary Katz filed a Penal Code section 1538.5 motion to suppress his blood alcohol chemical (BAC) test results.  Respondent superior court granted the motion after finding that under the totality of the circumstances Katz had not voluntarily consented to submit to a blood test.  In the petition for writ review, petitioner asks us to reverse the order and deny suppression on two grounds:  (1) respondent superior court's finding that Katz had not voluntarily consented to a blood test "rest[s] upon a misunderstanding of the law;" and (2) the BAC test results are admissible based on the inevitable discovery doctrine.  For the reasons we explain below, we agree with

1

petitioner's latter contention. Suppression of the evidence is not required as the record sufficiently demonstrates that the BAC test results would have been inevitably discovered even without Katz's consent. Accordingly, we shall grant the petition and direct the issuance of a writ of mandate, directing respondent superior court to vacate its order granting the motion to suppress evidence and to issue a new order denying the motion to suppress evidence.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 5, 2013, at approximately 3:50 a.m., Officer Armando of the San Francisco California Highway Patrol responded to a broadcast of a vehicle traveling in the wrong direction northbound on US-101 southbound and a three-vehicle traffic collision. At the scene, Officer Armando learned that Katz had been driving his vehicle on the wrong side of the highway, striking a victim's car head-on resulting in a fatality, and a third vehicle was damaged. Officer Armando observed Katz trapped in the driver seat of his car. Shortly thereafter, Officer Andrews of the San Francisco California Highway Patrol observed Katz was conscious and breathing, and the odor of alcohol was emanating from Katz's breath and person. Officer Armando observed Katz displayed several objective signs and symptoms of alcohol intoxication: his speech was slurred and he had red, watery eyes. While Katz was still in his car, Officer Armando asked Katz to submit a preliminary alcohol screening (PAS) sample. Katz submitted two PAS samples. The first sample registered .158% blood alcohol content. The second sample registered .160% blood alcohol content. While Katz was still in his car, Officer Armando placed him under arrest for felony driving under the influence causing injury to a person other than the driver (Veh. Code, § 23153, subd. (a)), based on Katz's objective symptoms of alcohol intoxication, his admission to consuming alcohol earlier that evening, and his PAS samples.

At the suppression hearing, the parties stipulated to the above described facts and the prosecution called one witness, Officer Robert Rich of the San Francisco California Highway Patrol. Officer Rich testified that after Katz was removed from his vehicle, the officer and a paramedic accompanied Katz in the ambulance to the hospital. Katz was

handcuffed by one wrist to a gurney inside the ambulance. While speaking with the paramedic, Katz said he had consumed two rum and Diet Cokes that evening, he had been driving his vehicle approximately 65 miles an hour, and he had been driving from "South San Francisco" in route to his home in Palo Alto, albeit he was actually driving northbound in the opposite direction on the wrong side of the freeway.

At the hospital Katz remained handcuffed while lying on the gurney. He was taken into a trauma room in the hospital emergency section. Officer Rich advised Katz of his *Miranda* rights, and Katz said he did not want to talk. Katz appeared to understand the *Miranda* advisements and he did not appear to ever lose consciousness. After the doctors stabilized Katz's condition, Officer Rich told Katz that he was under arrest for driving under the influence. The officer also informed Katz that, having been arrested for driving under the influence in the State of California, Katz had to submit to either a breath test or a blood test to determine his true blood alcohol content. Because the breath test was not available at the hospital, Officer Rich told Katz that the only available test was a blood test. Katz did not act combative or say that he did not want to submit to the blood test. Officer Rich arranged for a blood draw. He contacted dispatch and said he needed a San Mateo County phlebotomist to the San Francisco General Hospital to obtain samples of Katz's blood. A phlebotomist responded and administered a blood draw in the presence of Officer Rich. At no time during the blood drawing did Katz express a refusal to submit to the blood test. Because Katz had not refused to take the blood test, the officer did not read "the refusal admonition" to Katz, which would have told Katz the consequences of his failure to submit to a blood test.

Both the prosecutor, defense counsel, and respondent superior court, extensively questioned Officer Rich about Katz's response to the officer's advisement that he had to submit to a blood test. In his report Officer Rich stated that Katz "agreed to submit to the test," but Katz's exact words were not recorded in the report. Officer Rich testified he did not remember the "exact verbiage" used by Katz when he agreed to the blood test; it could have been something as simple as okay in response to the officer's statement that Katz had to submit to a blood test. It was Officer Rich's impression that Katz had agreed

3

to submit to the blood test, the officer knew that Katz had not refused to submit to the blood test, and Katz never declined by saying, " 'No, I don't want to do it.' " To the best of his knowledge Officer Rich was aware that on the night of the incident there was a phone number to call a judge for the issuance of a telephonic warrant if there was a refusal to submit to the blood test. But, Officer Rich did not believe there was a need to obtain a warrant that night.

Respondent superior court framed the issue before it as whether Katz had submitted to law enforcement authority given the totality of the circumstances. In resolving the issue, the court explained: Katz had been involved in a major accident, and at the time he spoke with Officer Rich, Katz was injured, handcuffed, and being treated in the hospital. Katz was not given a choice. He was told he had to submit to a blood test pursuant to implied consent and he was not informed he could refuse the blood test or told any consequences of a refusal. While Officer Rich did not recall exactly what Katz had said, Katz neither "affirmatively consented in terms of a word that the officer can remember," nor did Katz decline or physically refuse and he was compliant during the blood drawing. Based on the described facts, respondent superior court found that suppression of the BAC test results was required as Katz had not voluntarily consented to the blood test based on the totality of the circumstances.

On November 24, 2015, petitioner filed a petition for a writ of mandate challenging the order granting Katz's motion to suppress evidence. Petitioner also requested a stay of the trial then scheduled for January 4, 2016. We temporarily stayed the pending trial. We also requested the parties to file informal briefing and served notice that, if appropriate, we might issue a peremptory writ in the first instance pursuant to Code of Civil Procedure section 1088 and *Palma v. U.S. Industrial Fasteners, Inc*. (1984) 36 Cal.3d 171, 180 (*Palma*).

## DISCUSSION

Petitioner and Katz present extensive arguments addressing respondent superior court's substantive reasons for granting the motion to suppress the BAC test results on the ground that Katz had not voluntarily consented to submit to the blood test. However,

4

we need not address those contentions.  Even assuming respondent superior court properly determined that under the totality of the circumstances Katz had not voluntarily consented to submit to a blood test, we conclude that suppression of the BAC test results is not required based on the inevitable discovery doctrine.[1]

"The inevitable discovery doctrine acts as an exception to the exclusionary rule, and permits the admission of otherwise excluded evidence 'if the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police.'  (*Nix v. Williams* (1984) 467 U.S. 431, 447 [104 S.Ct. 2501, 81 L.Ed.2d 377] (*Nix*).)"  (*People v. Hughston* (2008) 168 Cal.App.4th 1062, 1071 (*Hughston*).)  In *Hughston,* our colleagues in Division Five noted a number of instances in which courts applied the inevitable discovery doctrine: "For example*,* in *Nix*, police officers discovered the location and condition of the victim's body through an unlawful interrogation of the defendant, but the court concluded that a simultaneous independent search would have inevitably led to discovery of the evidence.  (*Nix, supra*, 467 U.S. at pp. 449-450.)  In other cases, a search would have occurred as a matter of routine police procedure (See, e.g., *United States v. Andrade* (9th Cir. 1986) 784 F.2d 1431, 1433 [narcotics in bag in possession of lawfully arrested defendant inevitably would have been discovered through lawful inventory search]; *United States v. Martinez-Gallegos* (9th Cir. 1987) 807 F.2d 868, 869-870 [fact that defendant previously had been deported inevitably would have been discovered through examination of his immigration file]; see also *U.S. v. Boatwright* (9th Cir. 1987) 822 F.2d 862, 864-865 [citing and discussing cases].)"  (*Hughston, supra*, at pp. 1072-1073.)

Concededly, the existence of probable cause to obtain a search warrant to draw Katz's blood, in and of itself, "does not justify application of the inevitable discovery

---

[1]     Although the inevitable discovery doctrine was not raised in the parties' motion papers or at the suppression hearing, the record sets forth a sufficient factual basis for the application of the doctrine.  (See *People v. Boyer* (2006) 38 Cal.4th 412, 449; *People v. Robles* (2000) 23 Cal.4th 789, 801, fn. 7 (*Robles*); *Green v. Superior Court* (1985) 40 Cal.3d 126, 137-138 (*Green*); *People v. Limon* (1993) 17 Cal.App.4th 524, 539.)

5

exception. ([*People v. Superior Court (Walker)* (2006)] 143 Cal.App.4th 1183,] 1215 [49 Cal.Rptr.3d 831].) A violation of the Fourth Amendment may not be disregarded ' "simply because the police, had they thought about the situation more carefully, *could* have come up with a lawful means of achieving their desired results." [Citation.]' (*Id*. at p. 1216, fn. 30 [49 Cal.Rptr.3d 831]; see also *Robles, supra,* 23 Cal.4th at p. 801 [inevitable discovery exception inapplicable even accepting that police could have obtained a warrant based on plain view of stolen car in garage]; *U.S. v. Reilly* (9th Cir. 2000) 224 F.3d 986, 995 [' "to excuse the failure to obtain a warrant merely because the officers had probable cause and could have inevitably obtained a warrant would completely obviate the warrant requirement of the [F]ourth [A]mendment" '].)" (*Hughston, supra*, 168 Cal. App. 4th at p. 1072.) "Instead, in order to justify application of the inevitable discovery exception, [the prosecution] must demonstrate by a preponderance of the evidence that, due to a separate line of investigation, application of routine police procedures, or some other circumstance, the [blood test results] would have been discovered by lawful means. The showing must be based not on speculation but on 'demonstrated historical facts capable of ready verification or impeachment.' (*Nix, supra*, 467 U.S. at pp. 444-445, fn. 5.) The inevitable discovery exception requires the court ' "to determine, viewing affairs as they existed at the instant before the unlawful search, what *would have happened* had the unlawful search never occurred." ' (*U.S. v. Cabassa* (2d Cir. 1995) 62 F.3d 470, 473.)" (*Hughston, supra*, 168 Cal.App.4th at p. 1072.)

We find *People v. Rich* (1988) 45 Cal.3d 1036 (*Rich*), although not cited by the parties, is both instructive and dispositive. In *Rich*, the defendant was charged with, among other offenses, several counts of first degree murder. (*Id*. at p. 1060.) The trial court suppressed statements made by defendant on August 24 following his arrest including his tape-recorded confession to Detective Brewer but failed to suppress items of property taken in a consent search of defendant's residence on that same day and defendant's statements to certain acquaintances and/or friends made on August 23, after he left the police station (having completed a polygraph test) and up to the moment of his

arrest.  (*Id*. at pp. 1067-1068, 1076.)  In finding that the items taken during the search of defendant's residence were admissible, the Court explained:  "Defendant gave written consent for a search of his residence.  This search is . . . challenged on the basis that it was tainted by the suppressed confession to Detective Brewer. . . . [W]e are uncertain of the timing of the consent. . . .  If defendant consented to the search after the suppressed confession but before meeting with counsel, then the consent was tainted. [¶] . . . [H]owever, the evidence would inevitably have been discovered.  Defendant was under arrest for murder.  If he had not consented to a search of his residence, a warrant would have been sought and, on the basis of information provided by defendant's friends, would have been obtained.  The evidence thus would have been discovered even without defendant's consent.  Accordingly, the trial court did not err in finding the evidence admissible."  (*Id*. at pp. 1079-1080.)

So, too, in this case, we find that the record demonstrates that the blood test results sought to be suppressed would have been inevitably discovered.  At the accident scene, California Highway Patrol officers had detected that Katz had an odor of alcohol emanating from his breath and person, he displayed several objective signs and symptoms of alcohol intoxication, and he submitted two PAS samples, registering .158% blood alcohol content and .160% blood alcohol content, respectively.  At the time Officer Rich advised Katz he had to submit to a blood test, Katz was under arrest for driving under the influence.  If Katz had not consented to the blood draw, a warrant would have been sought and, on the basis of the information known to the police, would have been obtained.  Although a court is mandated to determine the propriety of the issuance of a search warrant on a case-by-case basis, Penal Code section 1524, allows for the issuance of a search warrant "[w]hen a sample of blood of a person constitutes evidence that tends to show a violation of Section 23140, 23152, or 23153 of the Vehicle Code and the person from whom the sample is being sought has refused an officer's request to submit to, or has failed to complete, a blood test as required by Section 23612 of the Vehicle Code, and the sample will be drawn from the person in a reasonable, medically approved manner."  (Pen. Code, § 1524, subd. (a)(13).)  Thus, the evidence sought to be suppressed

7

would have been discovered even without Katz's consent.  (*Rich*, *supra*, 45 Cal.3d at p. 1080.)

We therefore conclude that respondent superior court's order granting Katz's motion to suppress evidence should be vacated and a new order should issue denying the motion to suppress evidence.[2]

## DISPOSITION

The accelerated *Palma* procedure (*Palma, supra*, 36 Cal.3d 171) is appropriate here because "petitioner's entitlement to relief is so obvious that no purpose could reasonably be served by plenary consideration of the issue. . . ."  (*Ng v. Superior Court* (1992) 4 Cal.4th 29, 35.)

Let a peremptory writ of mandate issue, directing respondent superior court to vacate its order of October 27, 2015, granting Katz's Penal Code section 1538.5 motion to suppress evidence, and to issue a new order denying the motion to suppress evidence. This court's December 9, 2015, order staying the pending trial shall be dissolved on issuance of our remittitur.

_____

Jenkins, J.

We concur:

_____

Pollak, Acting P. J.

_____

Siggins, J.

---

[2] If Katz "thinks there is evidence he could present to contradict the inevitable discovery theory, he could, of course, seek to invoke the provisions of Penal Code section 1538.5, subdivision (h) for a suppression motion at trial upon a showing of good cause why prior to trial the opportunity to make this motion did not exist or why he was not aware of the grounds for the motion.  (see *People v. Superior Court (Edmonds)* (1971) 4 Cal.3d 605, 611 [94 Cal.Rptr. 250, 483 P.2d 1202].)"  (*Green, supra*, 40 Cal.3d at p. 139, fn. 11.)