Filed 1/21/21  P. v. Teran CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DANIEL TERAN,<br><br>    Defendant and Appellant. | H047228<br>(Monterey County Super. Ct.<br>Nos. 18CR008795/19CR000266) |

Defendant was convicted of carrying a concealed firearm following the denial of motions to suppress evidence and dismiss the charges in case number 19CR000266.  He argues, and respondent concedes, that the motion to suppress should have been granted because his detention was unreasonable under the Fourth Amendment.  We agree and will therefore reverse the judgment in that case.

## I.  BACKGROUND

Defendant was charged in case number 19CR800266 with carrying a concealed firearm (Pen. Code, § 25400, subd. (a)(2); count 1), carrying a loaded firearm (Pen. Code, § 25850, subd. (a); count 2), and misdemeanor resisting or obstructing a peace officer (Pen. Code, § 148, subd. (a)(1); count 3).  The offenses were alleged to have occurred on January 7, 2019.  The complaint alleged defendant was not the registered owner of the loaded gun (Pen. Code, § 25400, subd. (c)(6)), and that the offenses were committed while defendant was on bail in case number 18CR008795.  (Pen. Code, § 12022.1, subd. (b).)

Defendant moved to suppress evidence flowing from his detention and arrest on January 7. (Pen. Code, § 1538.5, subd. (a)(1)(A).) According to the testimony at the combined suppression/preliminary hearing, officers were dispatched "to a possible domestic in progress, where a female appeared to be chasing a male with a bat. And there was some kind of disturbance going on. And the female was crying." According to the dispatch, the male was wearing dark clothing. Dispatch did not report that the man had done anything to the woman or had otherwise committed a crime. Nor did dispatch report that the female was injured. Dispatch related that the male and female had left the scene and gone in different directions. The officer who detained defendant testified that he observed defendant walking down a street "[f]airly close" to the area of the reported incident, wearing a black shirt and black pants. No one else was in the area.

The officer believed defendant matched the description of the male involved in the disturbance, although "[i]t was unknown at that time" whether he was a victim or a suspect. The "intention is always to contact both halves to a domestic to ascertain what was going on," so the officer stopped his patrol car, walked toward defendant, and asked to speak with him. Defendant shook his head, gestured dismissively with his hands, said "no," and continued walking away from the officer. The officer told defendant to stop, that he was investigating a possible domestic issue, and needed to speak with him. Defendant ignored the officer's commands and continued walking. The officer caught up with defendant, again told him to stop, grabbed him by the arm, and ordered him to put his hands behind his back. Defendant tried to pull away, at which point the officer and his partner "took control of [defendant] and took him down to the ground with an arm for a takedown." As he was being handcuffed, defendant told the officer that he had a gun in his waistband. The officer removed the gun and disengaged the magazine, which contained several rounds of ammunition. The gun was not registered to defendant, who was placed under arrest.

2

The trial court denied the motion to suppress, ruling that the detention was a minimally intrusive exigent circumstances detention that resulted in the discovery of an illegal weapon. Defendant was held to answer the charges, which he moved to dismiss on the same Fourth Amendment grounds (Pen. Code, § 995, subd. (a)(2)(B)). That motion was denied for the additional reason "that there was a legitimate investigative detention that really was brief in nature, nonintrusive, [and] in a public area."

Defendant agreed to a global resolution of both the instant case and case number 18CR008795, in which defendant was charged with possessing a short-barreled rifle or shotgun in September 2018. (Pen. Code, § 33215.) Defendant pleaded no contest to the rifle charge in the 2018 case; he pleaded no contest to count 1 and admitted that he was not the registered owner of the gun in the 2019 case. The parties agreed defendant would serve concurrent 16-month county jail sentences under Penal Code section 1170, subdivision (h), and the remaining counts in the 2019 case would be dismissed. Defendant waived his appellate rights in the 2018 case but reserved his right to appeal in the 2019 case. The parties further agreed that any appellate decision in the 2019 case would not affect the sentence in the 2018 case. Consistent with the negotiated disposition, defendant was sentenced to concurrent 16-month lower terms under Penal Code section 1170, subdivision (h). The remaining counts were dismissed, and the on-bail enhancement stricken.

Defendant filed notices of appeal in both cases. A certificate of probable cause was denied in the 2018 case based on the appellate waiver which was part of the negotiated disposition. (See *People v. Panizzon* (1996) 13 Cal.4th 68, 80 ["a defendant [may] waive the right to appeal as part of [a negotiated plea] agreement"].) Defendant's briefing in this court does not argue that a certificate of probable cause is unnecessary, nor does he challenge any aspect of that case. Defendant's briefing challenges only the 2019 conviction.

3

## II. DISCUSSION

The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures. (U.S. Const., 4th Amend.) The detention of a person by law enforcement constitutes a seizure within the meaning of the Fourth Amendment "when an officer intentionally applies physical restraint or initiates a show of authority to which an objectively reasonable person innocent of wrongdoing would feel compelled to submit, and to which such a person in fact submits." (*People v. Linn* (2015) 241 Cal.App.4th 46, 57.) In reviewing a trial court's ruling on a motion to suppress evidence flowing from a detention, we exercise our independent judgment applying federal constitutional standards to determine whether the detention is reasonable under the Fourth Amendment. (*People v. Robles* (2000) 23 Cal.4th 789, 794; *People v. Leyba* (1981) 29 Cal.3d 591, 597.)

### A. THE OFFICERS LACKED REASONABLE SUSPICION OF CRIMINAL ACTIVITY

" '[S]ome minimal level of objective justification' " must be shown where police detain a person for investigative purposes. (*U.S. v. Sokolow* (1989) 490 U.S. 1, 7.) An officer must have "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.' " (*Ibid.*) "A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231; *Wilson v. Superior Court* (1983) 34 Cal.3d 777, 784 [a detention "may be undertaken by the police 'if there is an articulable suspicion that a person has committed or is about to commit a crime' "].) Mere hunches or generalized suspicions are insufficient to justify a detention. (*Terry v. Ohio* (1968) 392 U.S. 1, 27.)

The detention here was not supported by a reasonable and articulable suspicion that defendant had committed or was about to commit a crime. The detaining officer testified that when he approached defendant, there "was no information that the male had

4

committed a crime." The officer seized defendant thinking he matched the description of a male involved in a possible domestic disturbance; the officer wanted to investigate possible criminal activity by questioning "both halves" of a domestic incident; the officer was concerned for defendant's welfare; and defendant would not yield to the officer's commands. The inference that defendant may have committed a crime based on a general description of a man in the area reportedly being chased by a woman with a bat did not derive from sufficient articulable facts. (*People v. Ovieda* (2019) 7 Cal.5th 1034, 1047 (*Ovieda*) [reasonable suspicion requires more than possibility].) Nor does defendant's refusal to engage with the officer or his walking away provide grounds for the detention. A person "may not be detained even momentarily without reasonable objective grounds for doing so; and his refusal to listen or answer does not without more, furnish those grounds." (*Florida v. Royer* (1983) 460 U.S. 491, 498.)

## B. THE EXIGENT CIRCUMSTANCES DOCTRINE DOES NOT APPLY HERE

The exigent circumstances doctrine provides an exception to the Fourth Amendment's warrant requirement when searches are undertaken in emergency situations requiring prompt police action. (*Ovieda*, *supra*, 7 Cal.5th at pp. 1041–1042.) The doctrine may also apply in the context of a criminal investigation or when there is a need for emergency aid. (*Id*. at p. 1042.) The United States Supreme Court has recognized as exigencies "the need to pursue a fleeing suspect, protect individuals who are threatened with imminent harm, or prevent the imminent destruction of evidence." (*Carpenter v. United States* (2018) ___ U.S. ___, 138 S.Ct. 2206, 2223.) While we recognize that an on-the-street detention does not require a warrant, no exigency is shown on this record.

At the time the officers seized defendant, they had no reasonable suspicion that he had committed a crime or that his seizure was required to forestall the destruction of evidence of a crime. (*Ovieda*, *supra*, 7 Cal.5th at pp. 1048–1049 [a warrantless entry is not justified "to explore the *possibility*" of exigency].) Nor is there evidence on the

5

record before us that defendant was threatened with imminent harm or required emergency help. There was no report that defendant had been physically injured or desired medical assistance. Indeed, his gestures to the officer indicated the opposite— that he was able-bodied and did not desire law enforcement assistance. The officer's concern for defendant's welfare and his intention "to make sure" defendant "was just okay" do not provide reasonable grounds for the detention under the Fourth Amendment. Absent exigent circumstances, a community caretaking exception to the warrant requirement has been recognized only in the limited context of an automobile inventory, which does not apply here. (*Ovieda*, at p. 1049; *Cady v. Dombrowski* (1973) 413 U.S. 433, 441–443.)

## C. THE SPECIAL NEEDS DOCTRINE DOES NOT APPLY HERE

The United States Supreme Court has recognized an exception to the warrant requirement where " 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.' " (*Griffin v. Wisconsin* (1987) 483 U.S. 868, 873.) The special needs doctrine applies in contexts entirely different from those supporting the exigent circumstances doctrine. (*United States v. Curry* (4th Cir. 2020) 965 F.3d 313, 320, fn. 4.) "The lynchpin of the court's inquiry in all special needs cases is whether it is impracticable to require a warrant in light of the primary purpose of a programmatic search." (*Ibid.*) Special needs searches have included drug and alcohol testing of railway employees; probation searches; premises searches of highly regulated businesses; work-related searches of employee offices; school official searches of student property; and body cavity searches of prison inmates. (*Skinner v. Ry. Labor Executives' Ass'n* (1989) 489 U.S. 602, 619–624.) A roadblock where "police stopped all vehicles systematically" seeking voluntary assistance to identify the vehicle and driver involved in a hit and run accident has also come within the special needs exception to the warrant requirement. (*Illinois v. Lidster* (2004) 540 U.S. 419, 427–428.) The special needs doctrine does not apply in the context of an

6

investigatory seizure, such as here, where there are no "programmatic safeguards designed to protect against a law enforcement officer's arbitrary use of unfettered discretion." (*Curry*, at p. 320, fn. 4 ["In the context of an investigatory seizure … , such an inquiry is untenable"].)

On the facts elicited at the suppression hearing, defendant's detention was unreasonable under the Fourth Amendment. Defendant's motion to suppress evidence obtained as a result of the unlawful seizure, including the firearm and his statements at the police station, should have been granted. (*Wong Sun v. United States* (1963) 371 U.S. 471, 484–485.) Because the motion was erroneously denied, defendant's conviction must be reversed, and he must be given the opportunity to withdraw his plea. (*People v. Ruggles* (1985) 39 Cal.3d 1, 13; accord *People v. Miller* (1983) 33 Cal.3d 545, 556.)

### III.    DISPOSITION

The judgment in case number 19CR000266 is reversed and the matter is remanded to the trial court with directions to vacate its order denying the motion to suppress, to issue a new order granting the motion, and to provide defendant the opportunity to withdraw his plea. The appeal in case number 18CR008795 is dismissed.

_____
Grover, J.

WE CONCUR:


_____
Greenwood, P. J.



_____
Danner, J.



H047228 – The People v. Teran