[No. E050916. Fourth Dist., Div. Two. Aug. 18, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
KIMA RASHAN DOWNEY, Defendant and Appellant.

COUNSEL

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, James D. Dutton, Melissa Mandel and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**RICHLI, J.**—Defendant and appellant Kima Rashan Downey pled guilty to being a felon in possession of a firearm (Pen. Code, § 12021, subd. (a)(1)) and unlawful possession of ammunition (Pen. Code, § 12316, subd. (b)(1)). Defendant also admitted that he had suffered one prior serious or violent strike conviction (Pen. Code, §§ 667, subds. (c) & (e)(1), 1170.12, subd. (c)(1)) and three prior prison terms (Pen. Code, § 667.5, subd. (b)). In return, defendant was sentenced to a total term of four years in state prison, with credit for time served. Defendant's sole contention on appeal is that the

trial court erred in denying his suppression motion. (Pen. Code, § 1538.5.) We reject this contention and affirm the judgment.

## I

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Riverside Police Detective Kevin Townsend was assigned to the gang unit and had researched a probationer by the name of George Roussell.[2] Based on his research, Detective Townsend discovered that George Roussell was subject to standard Fourth Amendment probation search terms as a condition of his probation. Detective Townsend thereafter proceeded to determine where Roussell lived. This process was described by Detective Townsend as being "very difficult sometimes." The detective also explained that often probationers and parolees give false addresses to "basically" hide from the probation or parole searches.

Detective Townsend looked in different databases and called various agencies; he discovered different addresses for Roussell. The probation department informed the detective that Roussell lived in Moreno Valley, the court computer system indicated that Roussell lived in Corona, and Roussell's California driver's license noted Roussell lived in Riverside on Gould Street. The most recent information, as of March 2009, was from utility bills registered in Roussell's name at 8123 Magnolia Avenue, No. 85, in Riverside. There was also a telephone number in Roussell's name that listed the Magnolia address. The Magnolia address came up more than once. Detective Townsend explained that in his experience many probationers and parolees, as well as the general public, do not know that police have access to utility bills; therefore, "it is a very good source in finding out where someone lives."

On June 4, 2009, about 10:30 p.m., Detective Townsend and other officers from the Riverside Police Department conducted a probation search of the apartment on Magnolia. After knocking on the door numerous times, the officers forced entry into the residence. Upon entering, the officers saw a Black male identified as Tyrone Butler. Butler was immediately ordered to the

---

[1] The factual background is taken from the suppression hearing as well as from the preliminary hearing.

[2] The probationer is referred to in the transcript of the suppression hearing as George Ruso. However, the parties' moving papers refer to him as George Roussell. For the sake of clarity, we will refer to him as George Roussell.

floor and placed in handcuffs. The officers thereafter conducted a sweep of the apartment. During the sweep, two females and defendant were apprehended.

After all the occupants of the residence had been secured, the officers conducted the probation search. During the search, the officers found a loaded semiautomatic handgun with a round in its chamber in the kitchen. The officers also found paperwork in defendant's name and photographs showing defendant and Butler holding firearms, one of which appeared to be similar to the handgun found in the kitchen. A further search of the apartment revealed ammunition hidden in the kitchen.

Defendant demanded to know why the officers were present at the apartment, asserting that he was on neither probation nor parole. After an officer explained to defendant that they were there to conduct a search based upon Roussell's probation status, defendant exclaimed that Roussell did not live there; he had moved out "[a]bout three months ago." Roussell was not present at the apartment; however, the officers found two utility bills in Roussell's name in the apartment dated April and May 2009.

Detective Townsend did not review the records on Roussell's criminal case. The trial court took judicial notice of those records, which indicated Roussell's address had been updated between June 1 and June 4, 2009. In addition, Detective Townsend did not contact the utility companies to verify who paid the bills or search the other addresses listed for Roussell.

The property manager at the apartments at 8123 Magnolia Avenue stated that defendant lived in the subject apartment in June 2009 with several other people. Defendant and his ex-wife had signed the lease in June 2009. The manager had been watching defendant's apartment very closely, because she had received complaints about the traffic and the number of people who stayed over. She was unaware of the names of the people who stayed at the apartment and did not know whether Roussell lived there. She acknowledged that Roussell could have lived at the apartment without her knowledge. The manager informed police detectives on the day of the search that defendant and his ex-wife were supposed to be the only persons staying at the apartment. She also informed the detectives before the search that defendant and his ex-wife resided in the apartment and that she saw many people frequently staying at and/or going to the apartment.

Following argument from counsel, the trial court denied defendant's suppression motion. It found that the police officers had had a "good-faith belief in that in their search of records including different data bas[e]s there

were two specific areas that have been testified to that showed he had access to that address that was indeed searched. That is the phone and the public utilities." It further found "that the search [was] reasonable, and that there was indicia of ownership or domicile in the utility bills that were found. . . . [¶] It is clear that there [are] utility bills, social security payment work. There are people coming and going. [The] lease agreement although in [defendant's] name is not dispositive of . . . who can live there. And certainly once a good-faith search has been entered into along with the things that they found there is clearly a common area. It wasn't found in the bedroom. . . . [¶] . . . [¶] So the Court finds the search was done in good faith, was valid, and that items seized [were] in a communal or common area. So the motion is denied."

II

DISCUSSION

Defendant contends the trial court erred in denying his suppression motion, because the officers did not have a good faith belief Roussell resided in the apartment. We find defendant's contention unpersuasive.

■ The Fourth Amendment states in relevant part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." The purpose of this provision is to protect people from unreasonable search and seizure, and it applies to the states through the Fourteenth Amendment. (*Mapp v. Ohio* (1961) 367 U.S. 643, 650 [6 L.Ed.2d 1081, 81 S.Ct. 1684].) The remedy for a violation of the Fourth Amendment is to render inadmissible any evidence seized during the illegal search. (*Mapp*, at pp. 654–655.)

■ "In California, a person may validly consent in advance to warrantless searches and seizures in exchange for the opportunity to avoid serving a state prison term. [Citations.] Warrantless searches are justified in the probation context because they aid in deterring further offenses by the probationer and in monitoring compliance with the terms of probation. [Citations.]" (*People v. Robles* (2000) 23 Cal.4th 789, 795 [97 Cal.Rptr.2d 914, 3 P.3d 311].) However, "a search of a particular residence cannot be 'reasonably related' to a probationary purpose when the officers involved do not even know of a probationer who is sufficiently connected to the residence." (*Id.* at p. 797.) Accordingly, the court imposed a "knowledge-first requirement . . . ." (*Id.* at p. 800.)

Additionally, the California Supreme Court has held that a warrantless search of a probationer's house, undertaken to discover incriminating evidence against a third party residing there, is not constitutionally invalid if the circumstances, viewed objectively, justified the officer's actions. (*People v. Woods* (1999) 21 Cal.4th 668, 671–672 [88 Cal.Rptr.2d 88, 981 P.2d 1019].) In *Woods*, the officers relied on a probationer's search condition to justify a search designed to obtain evidence against her boyfriend, who shared the residence. The court noted that a probationer consents in advance to warrantless residential searches, conducted without reasonable suspicion or probable cause. (*Id.* at pp. 674–675.) Thus, the officers could search all portions of the residence over which they reasonably believed the probationer exercised control. (*Id.* at pp. 676, 681, 682.)

Here, of course, the officers knew of Roussell's search condition before they entered the apartment. The *Robles* court also reiterated its previous holding in *Woods* that when "the circumstances, viewed objectively, show a proper probationary justification for an officer's search . . . the officer's subjective motivations with respect to a third party resident do not render the search invalid." (*People v. Robles, supra*, 23 Cal.4th at p. 796, fn. omitted.)

"It is settled that where probation officers or law enforcement officials are justified in conducting a warrantless search of a probationer's residence, they may search a residence reasonably believed to be the probationer's. [Citations.] [T]he question of whether police officers reasonably believe an address to be a probationer's residence is one of fact, and we are bound by the finding of the trial court, be it express or implied, if substantial evidence supports it." (*People v. Palmquist* (1981) 123 Cal.App.3d 1, 11–12 [176 Cal.Rptr. 173], disapproved on another point in *People v. Williams* (1999) 20 Cal.4th 119, 135 [83 Cal.Rptr.2d 275, 973 P.2d 52]; see also *People v. Woods, supra*, 21 Cal.4th at pp. 673–682; *People v. Tidalgo* (1981) 123 Cal.App.3d 301, 306–307 [176 Cal.Rptr. 463].)

On appeal, defendant draws inferences and speculations from the evidence tending to support the conclusion that the officers did not have a reasonable basis to believe Roussell lived at the apartment. But, as just indicated, we must defer to the express and implied factual findings of the trial court: "As the finder of fact in a proceeding to suppress evidence [citation], the superior court is vested with the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences in deciding whether a search is constitutionally unreasonable. [Citation.] Accordingly, in reviewing the instant suppression order, we consider the record in the light most favorable to [the People] since 'all factual

conflicts must be resolved in the manner most favorable to the [superior] court's disposition on the [suppression] motion.' [Citation.] But while we defer to the superior court's express and implied factual findings if they are supported by substantial evidence, we exercise our independent judgment in determining the legality of a search on the facts so found." (*People v. Woods, supra*, 21 Cal.4th at pp. 673–674.)

Prior to the search, Detective Townsend checked that Roussell was subject to a probation search. Once he confirmed that Roussell had search terms as a condition of his probation, Detective Townsend proceeded to verify where Roussell lived by searching different databases and calling various agencies. His search revealed different addresses for Roussell. Detective Townsend stated that the most recent information was from utility bills registered in Roussell's name. The utility bills listed Roussell's address as 8123 Magnolia Avenue, apartment No. 85. The detective also discovered a telephone number in Roussell's name that listed the Magnolia address. The Magnolia address came up more than once. Detective Townsend explained that utility bills were a "very good source in finding out where someone lives," because in his experience many probationers and parolees, as well as the general public, did not know that police had access to utility bills, and often probationers and parolees gave false addresses so as to avoid being searched. Based on the utility bills and telephone record, it was reasonable for the officers to conclude that Roussell lived at 8123 Magnolia Avenue, apartment No. 85.

Although the record indicates that the property manager, prior to the search, had informed the detectives that defendant and his ex-wife resided in the apartment and that the lease was signed by defendant and his ex-wife, she had also informed the detectives that "a lot of people" stayed at the apartment. At no time did the property manager indicate to the detectives that Roussell did not live in the apartment; rather, she stated that she did not know whether Roussell lived in the apartment. Indeed, the property manager acknowledged that Roussell could very well have lived in the apartment and she would have been unaware of that fact. Based on all of the information known to the officers, it was objectively reasonable for them to conclude Roussell lived in defendant's apartment and was present at the time.

Defendant relies on *People v. Tidalgo, supra*, 123 Cal.App.3d 301. In that case, Everett, an acquaintance of Tidalgo's, was arrested on bad-check charges. Everett was then charged with stealing jewelry from Tidalgo's sister-in-law's house. Everett told the police that she had recently been at that house, where Tidalgo showed her baggies of marijuana and where she saw Tidalgo sell marijuana. (*Id.* at p. 303.) When officers arrived to search that

house pursuant to Tidalgo's probation condition, Tidalgo was present and told them it was not his house; it belonged to his sister-in-law. (*Id.* at p. 304.) Before entering the house, an officer saw a parrot that he had seen a year before at Tidalgo's parents' house. (*Ibid.*) The officer also saw fishing equipment, and although he did not know whether it was Tidalgo's, he knew Tidalgo fished often. (*Ibid.*) The officer also saw marijuana debris and paraphernalia and entered the residence. (*Id.* at p. 305.) The trial court granted the motion to suppress. Acknowledging that "the evidence was susceptible of different interpretations," the Court of Appeal upheld the trial court's conclusion that it was objectively unreasonable for the officers to think Tidalgo lived at that house, noting that it was "bound by the factual resolution of the lower court . . . ." (*Id.* at p. 308.)

This case is not helpful to defendant. In the same way that the *Tidalgo* court deferred to the trial court on factual findings, we accept the factual findings of the trial court in this case. (*People v. Camacho* (2000) 23 Cal.4th 824, 830 [98 Cal.Rptr.2d 232, 3 P.3d 878].) This means, however, that we draw inferences against defendant because the trial court here denied the motion to suppress. Furthermore, *Tidalgo* is distinguishable from the instant case. In *Tidalgo*, the officers had not ascertained that the residence was the parolee's before the search. In the instant case, after the officers checked multiple sources to discover Roussell's address, they had a reasonable belief that Roussell resided at the apartment. That the officers could have taken additional steps to verify Roussell's residence does not undermine our conclusion that the officers acted reasonably based on the information they already had when they acted. (Cf. *People v. Fuller* (1983) 148 Cal.App.3d 257, 263–264 [195 Cal.Rptr. 853, 210 Cal.Rptr. 1] [there was no substantial evidence to support a reasonable belief by police that a hotel room occupied by several persons was the defendant's residence, and it was incumbent upon investigating officers to ascertain ownership and occupancy to protect privacy interest of both the probationer and nonprobationer].)

Defendant asks this court to adopt the probable cause standard from several cases holding that entry of a home pursuant to an arrest warrant requires probable cause to believe the defendant is inside. We decline to adopt such a standard.

■ An arrest warrant "founded on probable cause" that the suspect has committed a crime gives law enforcement officers "the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." (*Payton v. New York* (1980) 445 U.S. 573, 603 [63 L.Ed.2d 639, 100 S.Ct. 1371]; see also *Steagald v. United States* (1981) 451 U.S. 204,

213–214 [68 L.Ed.2d 38, 101 S.Ct. 1642.) "As explicated by five other circuits, the 'reason to believe' standard is satisfied by something less than would be required for a finding of 'probable cause.' " (*U.S. v. Thomas* (D.C. Cir. 2005) 368 U.S. App.D.C. 285 [429 F.3d 282, 286], citing *Valdez v. McPheters* (10th Cir. 1999) 172 F.3d 1220, 1225–1226; see *U.S. v. Route* (5th Cir. 1997) 104 F.3d 59, 62; *U.S. v. Risse* (8th Cir. 1996) 83 F.3d 212, 216; *U.S. v. Lauter* (2d Cir. 1995) 57 F.3d 212, 215; *U.S. v. Magluta* (11th Cir. 1995) 44 F.3d 1530, 1535; see also *U.S. v. Bervaldi* (11th Cir. 2000) 226 F.3d 1256, 1263; *U.S. v. Lovelock* (2d Cir. 1999) 170 F.3d 339, 343; *U.S. v. Weems* (1st Cir. 2003) 322 F.3d 18, 22 [in dictum].)[3]

The majority of circuits have interpreted *Payton* to mean that officers entering a residence to execute an arrest warrant must have a "reasonable belief" that the targeted suspect (1) lives at that residence, and (2) is within the residence at the time of their entry. (*U.S. v. Thomas, supra*, 429 F.3d at p. 286.) Among the circuits that have directly confronted the issue, only the Ninth Circuit in *U.S. v. Gorman* (9th Cir. 2002) 314 F.3d 1105, a case relied upon by defendant, has adopted a different standard, holding that *Payton* requires police officers to have probable cause that a suspect lives at the residence in question and is present at the time of their entry. (*Gorman*, at p. 1110.) The Ninth Circuit stands alone among the federal circuits in its interpretation of *Payton* as requiring probable cause. (See *Motley v. Parks* (9th Cir. 2005) 432 F.3d 1072, 1080 (en banc); *Gorman*, at pp. 1111–1115.) Defendant's reliance on *Gorman* is not persuasive. (See *People v. Zapien* (1993) 4 Cal.4th 929, 989 [17 Cal.Rptr.2d 122, 846 P.2d 704].)

To borrow from the District of Columbia Circuit's observation, "[w]e think it more likely . . . that the Supreme Court in *Payton* used a phrase other than 'probable cause' because it meant something other than 'probable cause.' " (*U.S. v. Thomas, supra*, 429 F.3d at p. 286; see also *U.S. v. Magluta, supra*, 44 F.3d at p. 1534 ["[t]he strongest support for a lesser burden than probable cause remains the text of *Payton*, and what we must assume was a conscious effort on the part of the Supreme Court in choosing the verbal formulation of 'reason to believe' over that of 'probable cause' "], cert. den. *sub nom.*, *Magluta v. United States* (1995) 516 U.S. 869 [133 L.Ed.2d 126, 116 S.Ct. 189].)

Moreover, California case law is clear that the appropriate test is whether the facts known to the officers, taken as a whole, gave them *objectively reasonable grounds to believe* that Roussell lived at the apartment. (*People v. Robles, supra*, 23 Cal.4th at pp. 795–796; *People v. Woods, supra*, 21 Cal.4th

---

[3] The First and Eighth Circuits appear to have adopted the reasonable belief standard but have done so without mentioning the probable cause standard. (*U.S. v. Graham* (1st Cir. 2009) 553 F.3d 6, 12; *U.S. v. Risse, supra*, 83 F.3d at p. 216.)

at pp. 673–682; *People v. Tidalgo, supra*, 123 Cal.App.3d at pp. 306–307; *People v. Palmquist, supra*, 123 Cal.App.3d at pp. 11–12.)

Defendant's reliance on footnote 4 in *People v. Jacobs* (1987) 43 Cal.3d 472 [233 Cal.Rptr. 323, 729 P.2d 757] is misplaced. Contrary to defendant's suggestion, our Supreme Court in *Jacobs* did not hold that officers need probable cause to believe that the subject of the warrant, or a probationer, resides in the home. In *Jacobs*, the issue was whether the police had complied with the knock-notice statute and whether the defendant's 11-year-old stepdaughter validly consented to the entry. (*Id.* at pp. 476, 478–484.) The officers in *Jacobs* arrived at the defendant's residence about 3:20 p.m. to execute an arrest warrant. They arrived in plain clothes and an unmarked car. (*Id.* at pp. 476, 479.) The officers believed that the defendant would be home because they had information he was "not employed at a daytime job." (*Id.* at p. 478.) When they arrived, the defendant's 11-year-old stepdaughter opened the door; the officers went into the house. (*Id.* at p. 476.) The stepdaughter told the officers that the defendant was not home and would be home in about one hour. Based on those facts, the defendant argued that the officers unlawfully entered his home because they did not have reasonable grounds to believe he was inside the home. (*Ibid.*) The court agreed with the defendant, stating, "If the officers had a hunch or a hope defendant would be home, the evidence indicates it was dispelled before they entered the house. They arrived in plain clothes and an unmarked car, and there is no suggestion defendant perceived their arrival and fled or hid. Defendant's vehicles were nowhere in sight. When they asked [the stepdaughter] if defendant was home, she told them he would be back in an hour. The evidence does not suggest that [the stepdaughter's] response or behavior further aroused the officers' suspicions." (*Id.* at p. 479.) The court thus held the evidence was insufficient to give rise to a reasonable belief the defendant was inside the house. (*Ibid.*)

█ Applying the standard adopted by our Supreme Court and the majority of the circuit courts, we expressly hold that an officer executing an arrest warrant or conducting a probation or parole search may enter a dwelling if he or she has only a "reasonable belief," falling short of probable cause to believe, the suspect lives there and is present at the time. Employing this standard, the entry into defendant's apartment was lawful.

Accordingly, we uphold the trial court's conclusion that the officers had objectively reasonable grounds to conclude Roussell lived at the subject apartment and was present at the time, and therefore the officers had the right to enter the apartment to conduct a warrantless probation search.

## III

## DISPOSITION

The judgment is affirmed.

McKinster, Acting P. J., and Miller. J., concurred.

Appellant's petition for review by the Supreme Court was denied November 2, 2011, S196635.