Filed 5/1/14  P. v. Adam CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B248507 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA069232) |
| v. | |
| STEPHANE ADAM, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Susan M. Speer, Judge.  Affirmed.

Vicken H. Hagopian for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Viet H. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Stephane Adam was convicted of possession for sale of a controlled substance, methamphetamine (Health & Saf. Code, § 11378), pursuant to a plea agreement following denial of a motion to suppress evidence of the methamphetamine and cash. Imposition of sentence was suspended, and defendant was placed on formal probation for three years. He contends substantial evidence does not support denial of the motion to suppress. We affirm.

## MOTION TO SUPPRESS

1. *Pleadings.*

Defendant moved pursuant to Penal Code section 1538.5[1] to suppress the evidence of methamphetamine and cash found during a warrantless search of his residence conducted pursuant to a probation search of Leah Gilbert, on the ground the information Gilbert lived there was erroneous.[2] The prosecution opposed the motion, contending the police had reasonable grounds to believe Gilbert resided at the premises.

2. *Prosecution facts.*

On October 21, 2011 in the early afternoon, Los Angeles Police Officers Kevin Campbell and Michael Lambarth executed an arrest warrant for Gilbert at 14547 Greenleaf Street. After entering the property through a gate, the officers walked down the driveway to the rear of the premises. Officer Lambarth knocked at a bedroom door, and defendant opened it. When asked if Gilbert were present, defendant answered he and Gilbert had just awakened and she was in the bathroom. Defendant did not tell the officers Gilbert did not live there. Gilbert was detained when she came out a few moments later. A search of the bathroom and bedroom revealed hypodermic needles containing a reddish substance resembling methamphetamine in a box of female hygienic

---

[1] Hereinafter, all statutory references are to the Penal Code unless indicated otherwise.

[2] Section 1538.5 provides in pertinent part: "(a)(1) A defendant may move for the return of property or to suppress as evidence any tangible or intangible thing obtained as a result of a search or seizure on either of the following grounds: [¶] (A) The search or seizure without a warrant was unreasonable."

2

wipes, cash in a safe, female clothing in duffel bags and the dresser, a substance that looked like methamphetamine on the nightstand and in the dresser, and a bill from the Automobile Club of Southern California (AAA) dated October 4, 2011 addressed to both defendant and Gilbert at that address.

The officers knew Gilbert was on probation with search conditions. They believed the Greenleaf address was her residence for the following reasons. They had had numerous interactions with her at that location. In June, 2011 she was arrested leaving that location and twice in July, most recently on July 28, 2011, she was arrested at the location. On each occasion, she indicated that was her residence. Officer Campbell had never arrested her at any other location. Officer Lambarth had observed her at this location "multiple times" since her last arrest, because the location was the subject of numerous complaints and the officers frequently went there to investigate. It was common knowledge in Officer Lambarth's unit that this was where Gilbert lived. A Department of Motor Vehicle (DMV) inquiry made upon Gilbert's detention when she came out of the house indicated that this was Gilbert's mailing address as of October 12, 2011. On October 21, 2011, Officer Lambarth had no reason to believe this was not Gilbert's residence. Officer Lambarth did not know Gilbert was supposed to be enrolled in a residential drug treatment program.

The officers did not call Gilbert's probation officer, check court records, inquire of Dispatch, or run any other sort of check to find out if this was her residence, because they believed they knew that this was her residence. Officer Lambarth called Probation to verify Gilbert's search conditions that morning, but did not ask what address Probation listed for her residence.

3. *Defense.*

Gilbert was admitted to a residential drug treatment center in March 2011. Prior to July 2011, the center's director advised Gilbert's probation officer that Gilbert resided at the treatment center and would live there for 12 to 18 months. During the period from July 28 to October 21, she lived at the treatment center. She was arrested twice when she

3

was on a pass. She was accepted back into the program after her periods of arrest. The center's director sent monthly progress reports to the probation officer.

Gilbert, who was living with defendant, moved with him to the Greenleaf address in April 2011. She visited defendant while on day and overnight passes. She was at defendant's residence approximately 20 percent of the time. She had her things there. Defendant was not present on two of the occasions when she was arrested there. Defendant kicked her out in August 2011, and she infrequently visited after that. She was not living there on October 21, 2011. She went to defendant's house in the morning of October 21 to borrow money and fell asleep in the bed. The reason the AAA bill was addressed to both defendant and Gilbert was defendant signed her up on his membership. He agreed to let her give the DMV his address as her mailing address while she was in the drug treatment program. No other papers came for her at his address.

When the police arrived and told him they had a warrant for Gilbert's arrest, defendant told them it was just a coincidence Gilbert was there and demanded they leave.

4. *Trial court's ruling.*

The court denied the motion to suppress. The court stated "the issue is . . . whether or not the officers had a good faith belief that . . . Gilbert lived at the Greenleaf location looking at the facts as a whole as being objectively reasonable or not. [¶] . . . I don't really find that she was living at the [residential treatment program]. She was there some period of time, was given passes almost weekly. This was a condition of probation. This was not a permanent residence but rather a treatment facility that she left quite often. And it appears when she left the facility, she would frequently spend her time at the Greenleaf location with the defendant at least 20 percent of the time. [¶] By the defendant's own admission, he had moved into the Greenleaf location in April or May and moved into that location with . . . Gilbert. He didn't kick her out or they didn't break up until August. [¶] So even by his own admission, she was living there even though she was supposed to be in the treatment program at the same time. [¶] To further the officer's reasonable belief, she listed Greenleaf as her residence just a few weeks prior to her arrest. She was seen there in June and July of 2011. She'd been seen there at

4

several other times when she had not been arrested. There was a bill located at the location in her name that was dated October 4, 2011. [¶] She had feminine products there. She had clothes not only in the duffel bag but in the dresser drawer in the master bedroom. Apparently she was living - - sleeping in the bed with the defendant when she arrived at the location. [¶] This was an off-and-on relationship. When she left the treatment house, apparently she would go to Greenleaf. [¶] There's no reason for the officers to believe that she resided at the [drug treatment program] or she had another permanent residence. This appears to be her residence when she's not in the treatment facility. [¶] And there's no question that she was on probation, that she had search or seizure conditions. Even if the probation officer had told them that she'd been ordered into the [residential drug treatment program], I think they would have found her not there and then would have responded appropriately to the Greenleaf location. But that's just speculation on my part. [¶] . . . [¶] [The] court finds that the officers had a good faith belief that . . . Gilbert lived at the Greenleaf location and that she would have been there at the time the arrest warrant was issued. [¶] In this case the proof is in the pudding, she actually was there and in fact sleeping when they made their entry."[3]

## DISCUSSION

Defendant contends substantial evidence does not support finding that the officers had an objectively reasonable belief prior to their entry onto the premises that Gilbert lived at the Greenleaf address. We disagree with the contention.

" 'In reviewing a suppression ruling, "we defer to the superior court's express and implied factual findings if they are supported by substantial evidence, [but] we exercise our independent judgment in determining the legality of a search on the facts so found." ' [Citation.] [¶] Thus, while we ultimately exercise our independent judgment to determine the constitutional propriety of a search or seizure, we do so within the context

---

[3]    On March 6, 2013, defendant filed a petition for writ of mandate challenging the order denying the motion to suppress. (*People v. Adam*, B247284.) On March 25, 2013, the court of appeal summarily denied the petition.

of historical facts determined by the trial court. 'As the finder of fact . . . the superior court is vested with the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences in deciding whether a search is constitutionally unreasonable.' [Citation.] We review its factual findings ' " 'under the deferential substantial-evidence standard.' " ' [Citation.] Accordingly, '[w]e view the evidence in a light most favorable to the order denying the motion to suppress' [citation], and '[a]ny conflicts in the evidence are resolved in favor of the superior court ruling' [citation]. Moreover, the reviewing court 'must accept the trial court's resolution of disputed facts and its assessment of credibility.' [Citation.]" (*People v. Tully* (2012) 54 Cal.4th 952, 979.)

"Challenges to the admissibility of evidence obtained by a police search and seizure are reviewed under federal constitutional standards. . . . A warrantless search is unreasonable under the Fourth Amendment unless it is conducted pursuant to one of the few narrowly drawn exceptions to the constitutional requirement of a warrant." (*People v. Schmitz* (2012) 55 Cal.4th 909, 916.)

One of those exceptions is the probation search. (*Ibid.*) "A probationer . . . consents to the waiver of his Fourth Amendment rights in exchange for the opportunity to avoid service of a state prison term." (*People v. Bravo* (1987) 43 Cal.3d 600, 608.) One who cohabits with a probationer has "a reduced expectation of privacy," because the cohabitant is living with a probationer who is subject to a search condition. (*People v. Sanders* (2003) 31 Cal.4th 318, 330.) "Relying on the 'common authority' theory of consent, we [have] concluded that, if others live with a probationer, the shared areas of their residence may be searched based on the probationer's consent, given in advance by agreeing to a search condition. . . . [O]fficers generally may only search those portions of the residence they reasonably believe the probationer has complete or joint control over. [Citation.]' [Citation.]" (*People v. Schmitz, supra*, 55 Cal.4th at pp. 917-918.)

"[T]he rule that whether a search is reasonable must be determined based upon the circumstances known to the officer when the search is conducted and is consistent with the primary purpose of the exclusionary rule—to deter police misconduct."

6

(*People v. Sanders*, *supra*, 31 Cal.4th at p. 332.)  " '[A]lmost without exception in evaluating alleged violations of the Fourth Amendment the [Supreme] Court has first undertaken an objective assessment of an officer's actions in light of the facts and circumstances then known to him.' [Citation.]" (*Id.* at p. 334.)  "It is apparent that in order to satisfy the 'reasonableness' requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government – whether the magistrate issuing a warrant, the police officer executing a warrant, or the police officer conducting a search or seizure under one of the exceptions to the warrant requirement – is not that they always be correct, but that they always be reasonable. . . .  'Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part.  But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability.' " (*Ill. v. Rodriguez* (1990) 497 U.S. 177, 185-186.)

" 'It is settled that where probation officers or law enforcement officials are justified in conducting a warrantless search of a probationer's residence, they may search a residence reasonably believed to be the probationer's. . . .  [T]he question of whether police officers reasonably believe an address to be a probationer's residence is one of fact, and we are bound by the finding of the trial court, be it express or implied, if substantial evidence supports it.' [Citations.]" (*People v. Downey* (2011) 198 Cal.App.4th 652, 658.)  Where it is reasonable for  officers to believe the probationer resided at a third party's address based on checking multiple sources, "[t]hat the officers could have taken additional steps to verify [the probationer's] residence does not undermine [the] conclusion that the officers acted reasonably based on the information they already had when they acted." (*Id.* at p. 660.)

Substantial evidence supports the trial court's finding that it was reasonable for the officers to believe Gilbert resided at the Greenleaf address based on the facts and circumstances that the officers testified were known to them prior to conducting the search.  (See *People v. Tully*, *supra*, 54 Cal.4th at p. 979 [the trial court is the judge of

7

witnesses' credibility].)  The officers had arrested Gilbert at this address on three occasions in June and July 2011, most recently on July 28, 2011.  She was not arrested anywhere else.  On each occasion, Gilbert stated she resided at the Greenleaf address.  The police continued having contacts with Gilbert at the address after July 28.  The police had no reason to think that she had any other residence.  As these facts " ' "warrant[ed] a man of reasonable caution in the belief" ' that [Gilbert] had authority over the premises," (*Ill. v. Rodriguez*, *supra*, 497 U.S. at p. 188), it matters not that the officers could have, but did not, take additional steps to verify Gilbert's residence address.  (*People v. Downey, supra,* 198 Cal.App.4th at p. 660.)  Moreover, there is no contention the officers' presence at the bedroom door, to execute Gilbert's arrest warrant, was improper.  They found that Gilbert was there, asleep in bed.  Upon detaining her, the officers learned she had listed the premises as her address only nine days earlier.  This information and her presence provided additional confirmation of the officers' reasonable belief that Gilbert resided there.  Accordingly, substantial evidence supports denial of the motion to suppress.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

KITCHING, J.

ALDRICH, J.

8