Filed 6/10/15  P. v. Robledo CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LUIS ROBLEDO,<br><br>    Defendant and Appellant. | B256192<br><br>(Los Angeles County<br>Super. Ct. No. LA073032) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joseph A. Brandolino.  Affirmed.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson and Idan Ivri, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Police officers conducted a parole search of Luis Robledo's residence and found a firearm and other items of contraband. Following the denial of his motion to suppress evidence, Robledo pled no contest to five felony counts, including possession of a firearm by a felon (Pen. Code,[1] § 29800, subd. (a)(1)). He was sentenced to a two-year state prison term. On appeal, Robledo contends the trial court erroneously denied his suppression motion because no one on parole was living at his residence at the time of the search. The People contend the trial court failed either to impose or strike the section 667.5, subdivision (b), enhancements. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Information*

Robledo was charged in an information with one count each of possession of a firearm by a felon, possession of a billyclub or blackjack (§ 22210), possession of nunchaku (§ 22010), possession of ammunition (§ 30305, subd. (a)(1)) and possession for sale of methamphetamine (Health & Saf. Code, § 11378). The information specially alleged Robledo had previously served two separate prison terms for felonies (§ 667.5, subd. (b)). Robledo pled not guilty and denied the special allegations.

### B. *The Suppression Hearing*

1. People's Evidence

On the evening of January 10, 2013, Los Angeles Police Officer Roberto Martinez and his partner initiated a traffic stop of a truck driven by Robledo for an outstanding warrant associated with the truck's registered owner. The officers recovered a beer bottle containing several hypodermic syringes from the floorboard of the truck. Robledo volunteered that he took the syringes from a family member with a drug problem and was

---

[1]     Statutory references are to the Penal Code, unless otherwise indicated.

2

going to dispose of them.[2]  The officers placed Robledo under arrest and found $1,000 in his pocket during a search.

Officer Martinez testified Robledo provided an Amigo Avenue address as his residence, which Martinez checked using the computer in his patrol car.  Martinez accessed the state parole system's database and entered the Amigo Avenue address.  The computer indicated a parolee named Alicia Green also lived at that address.  Robledo identified Green to the officers as "kind of like a girlfriend."  Martinez decided to conduct a parole compliance check of Green at the Amigo Avenue address.  On cross-examination, Martinez acknowledged the database he had accessed probably listed the name of Green's parole officer, whom neither he nor his partner attempted to contact.

Officer Martinez and his partner arrived at the Amigo Avenue address, which was a house.  Martinez spoke to a man living at the house, asked him about Green and showed him Green's booking photograph.  The man said that Green had moved into the back house with Robledo approximately six months earlier.  The officers entered the back house, a converted garage that shared the same address as the front house.  Inside the converted garage, the officers found women's clothing and cosmetics, men's clothing, and Robledo's driver's license.  They also discovered a handgun, ammunition, nunchaku and methamphetamine.[3]


2.  Defense Evidence

Green testified for the defense that Robledo was her former boyfriend.  Green was released from jail on December 8, 2012 and immediately moved into Robledo's Amigo Avenue address, where she lived until January 4, 2013.  During that time, Green was on

---

[2]  A woman passenger consented to the search of her purse in which officers found an additional hypodermic syringe.

[3]  Precluded by defense counsel's objection from enumerating at the suppression hearing all items recovered during the search, Officer Martinez testified at the preliminary hearing to having found a collapsible baton inside the residence, which was the factual basis for count 2, possession of a billyclub or blackjack.

parole and her parole officer, Agent Huston Dale, verified she had moved into the Amigo Avenue address. Green testified she moved out of the Amigo Avenue address and into Sunlight of the Spirit, a sober living facility, on January 4, 2013.[4] Green claimed she had attempted to notify Dale on that date of her change of residence by leaving him voicemail messages on his telephone.

At approximately 2:00 p.m. on January 10, 2013, Green presented a change of residence form to the parole office, indicating she was no longer living at the Amigo Avenue address. Green acknowledged she could have left some clothing at the Amigo Avenue address after she had moved. Green was discharged from parole on August 4, 2013.

Dale testified he did not recall receiving telephone messages from Green informing him of her change of residence. Dale saw Green's change of residence form on the morning of January 11, 2013, when he came into the office. He visited her at the Sunlight of the Spirit facility later that day to verify her move. Part of Dale's job was to update the computer's parole database with a parolee's change of residence once he verified it. In this instance, Dale could not recall when he entered Green's new address into the system. Sometimes he entered a parolee's change of address into the system the same day it was verified; other times he did not make the entry until a week later depending on how busy he was.

3. Trial Court's Findings

After requesting supplemental briefing on the good faith exception to the exclusionary rule, the trial court denied the suppression motion, finding: Green did not notify the parole office in writing of her change of residence until January 10, 2013, the day of the disputed search, when the parole database accessed by Officer Martinez still showed Green living at the Amigo Avenue address; after receiving written notice of

---

[4]     Green signed an intake form at the Sunlight of the Spirit facility on January 4, 2013. She received an official letter of admission to the facility on January 11, 2013.

Green's change of residence, Dale acted promptly by verifying her move the following day, January 11, 2013; and although Green moved out of the Amigo Avenue address on January 4, 2013, the fact her new residence could not be verified until January 11, 2013, was due to Green's own delay in providing a written change of residence. Thus, the trial court concluded that Dale acted reasonably in accordance with the official procedures of the parole office; any errors in the parole system data base were entirely the fault of Green; and the officers relied in good faith on the parole data base, especially in light of the statement made by the individual at the scene confirming that Green lived in the back house. The court determined the exclusionary rule was not applicable and denied the motion to suppress.

### C. *Plea and Sentencing*

Following the denial of the suppression motion, Robledo entered an open plea to the court of no contest to the five counts and admitted the prior prison term allegations. The court sentenced Robledo to two years in state prison, the middle term on each count to be served concurrently.

## DISCUSSION

### A. *The Suppression Motion Was Properly Denied*

1. Standard of Review

In reviewing the denial of a motion to suppress evidence, we defer to the trial court's factual findings, express or implied, when supported by substantial evidence. (*People v. Tully* (2012) 54 Cal.4th 952, 979.) The power to judge credibility, weigh evidence and draw factual inferences is vested in the trial court (*Ibid.*) However, in determining whether, on the facts found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. (*Ibid*.; *People v. Lomax* (2010) 49 Cal.4th 530, 563.) Whether relevant evidence obtained by assertedly unlawful means must be excluded is determined exclusively by deciding whether its suppression is

mandated by the federal Constitution.  (Cal. Const. art. I, § 28, subd. (f)(2); see *People v Schmitz* (2012) 55 Cal.4th 909, 916.)

### 2.  The Exclusionary Rule

The Fourth Amendment guarantees individuals the "right . . . to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." (U.S. Const., 4th Amend.)  To deter Fourth Amendment violations, when the People seek to admit evidence obtained as a result of an illegal search or seizure, the exclusionary rule may prohibit the introduction of that evidence at trial.  (*United States v. Calandra* (1974) 414 U.S. 338, 347 [94 S.Ct. 613, 38 L.Ed.2d 561]; *Rakas v. Illinois* (1978) 439 U.S. 128, 134 [99 S.Ct 421, 58 L.Ed.2d 387].)  However, whether to suppress the evidence under the exclusionary rule is a different question from whether the People have violated a defendant's Fourth Amendment rights.  (*United States v. Leon* (1984) 468 U.S. 897, 906 [104 S.Ct. 3405, 82 L.Ed.2d 677]; see *Calandra, supra*, at pp. 347-348.)  Merely because a Fourth Amendment violation has occurred does not necessarily mean that exclusion of evidence automatically follows.  Instead, the exclusionary rule "applies only where it '"result[s] in appreciable deterrence."'  [Citation.]"  (*Herring v. United States* (2009) 555 U.S. 135, 141 [129 S.Ct. 695, 172 L.Ed.2d 496] (*Herring*)).  "Indeed, exclusion 'has always been our last resort, not our first impulse' . . . ."  (*Id.* at p. 140.)

### 3.  The Good Faith Exception to the Exclusionary Rule

The United States Supreme Court created the good faith exception to the exclusionary rule in *United States v. Leon, supra,* 468 U.S. 897.  In holding the exclusionary rule does not apply to evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant, the court reasoned that suppressing the evidence seized would not serve the rule's purpose of discouraging police misconduct. (*Id.* at p. 922.)

The United States Supreme Court has since applied the good faith exception to searches performed by police in objectively reasonable reliance on a subsequently

6

invalidated statute (*Illinois v. Krull* (1987) 480 U.S. 340 [107 S.Ct. 1160, 94 L.Ed.2d 364]); incorrect information regarding an arrest warrant in a computer database maintained by judicial employees (*Arizona v. Evans* (1995) 514 U.S 1 [115 S.Ct. 1185, 131 L.Ed.2d 34]); incorrect information regarding an arrest warrant in a computer database maintained by law enforcement (*Herring*, *supra*, 555 U.S. 135); and binding judicial precedent later overruled (*Davis v. United States* (2011) 564 U.S. ___ [131 S.Ct. 2419, 180 L.Ed.2d 285].)

      4.  The officer's reliance on the misinformation in the parole system
         database was objectively reasonable.

Robledo contends the trial court erroneously denied his suppression motion because no one living at his residence was on parole at the time of the search.  Based on *People v. Willis* (2002) 28 Cal.4th 22 (*Willis*), Robledo maintains the two officers in this case were negligent in relying on misinformation in the parole system's database generated by law enforcement without confirming Green's current address with her parole officer before searching the residence.[5]  Robledo argues the exclusionary rule should have been applied, as it was in *Willis*, to deter such negligent police conduct in the future.

In *Willis*, a parole record mistakenly showed the defendant was on parole, when he had actually been discharged from parole months earlier.  (*Willis*, *supra*, 28 Cal.4th at pp. 26-28.)  Despite the fact the defendant denied being on parole and presented documentation to the officers that he had been discharged from parole, a parole officer and a police officer searched the defendant's motel room.  (*Id.* at p. 27.)  The search uncovered narcotics and narcotics paraphernalia.  (*Ibid.*)  The source of the error in the defendant's parole record was unclear, but it was either the fault of the parole officer,

---

[5]    Robledo is not arguing on appeal, as he did before the trial court, that the good faith exception was inapplicable because of the failure of the parole agent to enter Green's correct address in the parole system's database.

who directed the search, or a parole system data entry clerk, who was responsible for maintaining accurate parole records. (*Id.* at p. 35.) The defendant's suppression motion was denied. (*Id.* at p. 28.)

The California Supreme Court held the good faith exception to the exclusionary rule was inapplicable. (*Willis, supra,* 28 Cal.4th at p. 38.) The court found that the police officer's and the probation officer's reliance on the erroneous parole record was not objectively reasonable. Neither of them made any attempt to verify the defendant's parole status by other means prior to conducting the search. (*Id.* at p. 43.) Furthermore, regardless of the source of the error, the court found it was attributable to the entire "law enforcement team," which included the parole officer and the data entry clerk, as adjuncts to law enforcement. (*Id.* at pp. 39-46.) Thus, the fact that the defendant had been discharged from parole prior to the search was within the collective knowledge of the law enforcement team, which precluded the application of the good faith exception. (*Id.* at pp. 38-40, 44-47.) The *Willis* court concluded that suppression of the evidence in that case was consistent with the deterrence goal of the exclusionary rule by providing an incentive to law enforcement officials to maintain accurate parole records. (*Id.* at pp. 48-49.)

Robledo's reliance on *Willis* is misplaced.[6] Since *Willis*, the United States Supreme Court has refined the parameters of the good faith exception. In *Herring*, officers in one county arrested the defendant based on a warrant listed in a neighboring county's computer database. The defendant was searched incident to arrest, and the officers found drugs and a gun. (*Herring*, *supra*, 555 U.S. at p. 137.) It was subsequently discovered that the warrant had been recalled months earlier, although that information was never entered into the county's database. (*Id*. at pp. 137-138.) The

---

[6] In any event, the facts in *Willis* are distinguishable. Unlike the officers in *Willis*, Officer Martinez and his partner also relied on information from Robledo regarding Green, and on the confirmatory statement regarding Green's residence by her neighbor at the site searched.

defendant was indicted on federal gun and drug possession charges and moved to suppress the evidence, arguing his arrest had been illegal. (*Id.* at p. 138.) His suppression motion was denied. (*Ibid.*)

Acknowledging the errors in the *Herring* case were due to police negligence, the United States Supreme Court upheld denial of the suppression motion. (*Herring*, *supra*, 555 U.S. at p. 147.) The Supreme Court assessed the culpability of the police and the efficacy of excluding the evidence in deterring future police misconduct, concluding: "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." (*Id.* at p. 144.) However, where, as here, "police mistakes are the result of negligence . . . rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not 'pay its way.' [Citation.] In such a case, the criminal should not 'go free because the constable has blundered.' [Citation.]" (*Id.* at pp. 147-148.) The *Herring* court emphasized, however, that to claim the benefits of the good faith exception, the police must have acted "'in objectively reasonable reliance'" on factually incorrect information or subsequently invalidated warrants or statutes. (*Id.* at pp. 142, 146.)

We agree with the trial court's finding that the good faith exception to the exclusionary rule applies in this case. The evidence shows the officers objectively reasonably relied on the incorrect address for Green provided by the parole system's database to conduct the search. Furthermore, Officer Martinez and his partner did not act solely on the basis of this erroneous information. They also made reasonable efforts to independently verify Green's current address, first by asking Robledo if he knew Green and then by asking Robledo's neighbor if he could identify Green from her booking photograph. The neighbor identified Green and told the officers Green was living with Robledo in the converted garage behind his house. After speaking with Robledo and the neighbor, there was no reason for the officers to doubt the accuracy of the database

9

information.  Thus, substantial evidence supported the trial court's implicit finding the officers were justified in believing the Amigo Avenue address in the database was Green's current residence.  (See *People v. Downey* (2011) 198 Cal.App.4th 652, 658 [whether officers reasonably believe an address is a probationer's residence is a question of fact, binding on the appellate court if supported by substantial evidence].)

Even if, as Robledo claims, the officers should have contacted Green's parole officer, we conclude under *Herring* that the nature of their culpability was "simple, 'isolated' negligence."  (*Davis v. United States, supra*, 564 U.S. at p. ___ [131 S.Ct. 2427-2428], citing *Herring, supra*, 555 U.S. at p. 137.)  Nothing in the record suggests the officers acted with a "deliberate, reckless, or grossly negligent" disregard for Robledo's Fourth Amendment rights.  (*Herring, supra*, at p. 144.)  Accordingly, in the absence of any conscious effort by the officers to violate the Fourth Amendment, there was nothing to deter; the benefit of applying the exclusionary rule here would therefore be "'marginal or nonexistent.'"  (*Id.* at p. 146.)  The suppression motion was properly denied.

## B.  *Resentencing Is Not Necessary*

After the suppression motion was denied, Robledo pled no contest to the charges against him.  He also admitted the enhancement allegation that he had two prior convictions within the meaning of section 667.5, subdivision (b).  The trial court found the allegations to be true.  However, in sentencing Robledo, the trial court failed either to impose or dismiss the two section 667.5, subdivision (b), enhancements.  The People argue that we should remand to the trial court for resentencing pursuant to *People v. Bradley* (1998) 64 Cal.App.4th 386, 390-391.  Here, however, the trial court's intent to dismiss the section 667.5 subdivision (b), enhancements is discernible from the record. The trial court indicated it would consider a sentence of two years state prison on all the counts if Robledo pled open to the court.  The trial court repeated the indicated two-year sentence before Robledo entered his plea.  Under these circumstances, we find the court's

10

intent to dismiss the section 667.5, subdivision (b), enhancements is clear, and remand is unnecessary.

## DISPOSITION

The judgment is affirmed.

STROBEL, J.*

We concur:

PERLUSS, P. J.

ZELON, J.

---

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11