Filed 12/15/20  P. v. Varga CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br>ATTILA ALEX VARGA,<br><br>        Defendant and Appellant. | A157243<br><br>(Napa County<br>Super. Ct. No. 18CR001720) |

Appellant Attila Alex Varga was convicted by jury of possession for sale of methamphetamine and possession of narcotic paraphernalia.  At the preliminary hearing, he unsuccessfully moved to suppress the evidence, all of which was confiscated during the search of his bedroom at Capstone Court in Napa.  On appeal, he does not dispute his factual guilt of the charges; instead, he challenges only the denial of the motion to suppress evidence (Pen. Code, § 1538.5).[1]  We affirm.

---

[1] Undesignated statutory references are to the Penal Code.  Appellant did not renew his motion pursuant to section 1538.5, subdivision (i), after the filing of the information, nor did he challenge its denial by way of a motion to set aside the information pursuant to section 995.  Respondent contends appellant is now precluded from raising the motion on appeal.  In the alternative, appellant raises an ineffective assistance of counsel claim for failure to preserve the issue.  We do not reach these issues, finding instead that the motion was properly denied.

1

FACTUAL AND PROCEDURAL BACKGROUND

On May 18, 2018, Napa Police Officer Thomas Keener conducted a probation search related to E. Dellagana, whose probation required her to submit to search of her residence. He consulted both the Napa Police Department and Napa County law enforcement record systems, which showed her current address to be Capstone Court.

These record entries were both made in 2016. One was the result of an encounter with Dellagana at a hospital where her daughter was being treated as a crime victim. The reporting officer on that occasion asked, "[I]f we need to get ahold of you where can we find you?" The second was the result of the service of a search warrant at the Capstone address in December 2016. Dellagana was a subject of the warrant, was seen leaving the residence, and possessed keys to the residence.

Keener was also aware that "within recent months [officers] had served a search warrant at that residence where Miss Dellagana was contacted." Keener reviewed Dellagana's probation order "to see that she was in fact on searchable probation." He did not contact anyone at the probation department or the court to verify her current address.

At the time Dellagana was placed on the relevant probation in early 2018, she gave an address of "Magnolia NSH," which Keener testified was a residential treatment program associated with Napa State Hospital that was not a permanent residence.[2] Appellant produced evidence that Dellagana held a month-to-month lease at the treatment program beginning in

---

[2] Dellagana signed the probation order, and apparently wrote in the Magnolia address, on January 30, 2018, but it was not signed by the judge and filed until April 17. It is not clear from the record whether Keener noticed the Magnolia address when he reviewed the probation order prior to the search.

2

December 2017; she was dismissed from the program a month after the search in question.[3]

On the day of the search, officers located Dellagana in a bedroom of the home on Capstone. Through an open window, they informed her that they were there to conduct a probation search; she asked if they could come back later. Appellant opened the front door and told the police Dellagana was in the bedroom. Dellagana, who was sitting on the bed, informed the officers that she was unable to walk because of recent medical care. Appellant helped her into a wheelchair, and they exited the room. It appeared to the officer that "it was almost impossible" for Dellagana to move without the wheelchair. The officer did not note whether the room contained a woman's belongings: "The room was a mess so I didn't really pay attention to what type of belongings were in the room." Dellagana told the officers that she had been staying at the residence "off and on."[4]

Appellant, not Dellagana, was charged with possession of the contraband found in the bedroom.

## DISCUSSION

As noted, appellant does not dispute his factual guilt of the charges, nor does he dispute that Dellagana was subject to residential search as a condition of her probation. He contends only that the trial court erred in finding that Keener's belief that Dellagana resided at Capstone was objectively reasonable. The parties agree that we review that finding for

---

[3] These records were received in evidence but were returned to counsel at the conclusion of the motion. The record on appeal was not augmented with them. Their content was not in dispute. We take our description of them from the discussion of court and counsel.

[4] Dellagana later told officers she had been staying with appellant for three weeks.

3

substantial evidence. " '[T]he question of whether police officers reasonably believe an address to be a probationer's residence is one of fact, and we are bound by the finding of the trial court, be it express or implied, if substantial evidence supports it.' " (*People v. Downey* (2011) 198 Cal.App.4th 652, 658.)

Here, Officer Keener consulted two separate law enforcement databases that reflected a current address of Capstone Court for Dellagana as of 2016. The prosecutor demonstrated Dellagana's connection to the residence in 2016 was not passing, i.e., in one instance, she gave the address as a place where she could be located if law enforcement needed to contact her in regard to her daughter who had been the victim of a crime, and in the other, she was the subject of a criminal investigation at the property and, thanks to a set of keys, had complete access to the property.

As against a contention that this information was stale lie the facts that upon officers going to the residence to conduct the search in May 2018, Dellagana was present sitting on a bed in a relatively immobilized state following medical care. She indicated she had been staying there off and on, and when first informed of the officers' intention to conduct a probation search, she did not deny she lived there. Instead, she asked them to come back later—not the ordinary request of a guest. The recent information that Dellagana had been present during the service of a search warrant was quite vague, but in any event, the circumstances surrounding her presence *at the time of the search* are compelling.

Appellant relies principally upon the evidence that Dellagana's probation order from early 2018 showed the Magnolia address. Although the court signed and filed that order in April 2018, Dellagana had given the Magnolia address and signed the document in January 2018. It is not clear

4

from the record whether Keener saw this address when he consulted the order for purposes of verifying her search terms.  In reason, we must impute that knowledge to him.  (See *People v. Ramirez* (1983) 34 Cal.3d 541, 546–547.)

However, he certainly was not required to accept that address as accurate or current.  Appellant contends Keener should have accepted the Magnolia address because it was the most recent one.  However, the most recent evidence consisted of the circumstances observed by the officers at the time of the search.  We acknowledge a different result may have followed if Dellagana had not been present—along with all attendant circumstances—at the time of the search.  It might be suggested that Keener was obligated to first investigate the currentness of the Magnolia address.  Yet, he knew it was not a permanent residence, and had he contacted the program, he presumably would have learned that Dellagana had not been staying there for at least three weeks—the amount of time she later stated she had been staying on Capstone.  In sum, at the time of the search, Keener was faced with a probationer whose intimate relationship with the residence had existed and persisted for two years.

Appellant cites no authority for the proposition that the facts as known by Keener (i.e., a relatively immobile individual staying in a bedroom for an extended period of time following medical care, who had previously given the address as her own on more than one occasion and previously been known to have exercised dominion there) do not establish residence for the purposes of probation search terms.  He also cites no authority that a probationer can have only one residence for the purposes of probation search terms, namely the one written on the probation order.

In *Case v. Kitsap County Sheriff's Dept.* (9th Cir. 2001) 249 F.3d 921, the Ninth Circuit Court of Appeals considered a related question: whether, for purposes of warrantless entry to arrest, an officer's belief that the subject of an arrest warrant resided in the residence in question was reasonable. There, officers in Washington entered the home of Christopher Russell to arrest Case on an Oregon warrant. Oregon officers had verified that Case was living at the address, and Russell confirmed that Case was staying at the house. Just prior to the entry, officers spoke by phone to Case at the residence. (*Id.* at pp. 924–925.) The court concluded: "By all indicia, [Case] was far more than a mere 'overnight guest.' Case presents insufficient evidence supporting her argument that a reasonable officer would have investigated her residency further or why further investigation would preclude a reasonable officer from concluding that she was a co-resident of the . . . residence." (*Id.* at p. 931.)

In reaching this conclusion, the Ninth Circuit relied upon *U.S. v. Risse* (8th Cir. 1996) 83 F.3d 212, where officers entered Risse's home to execute an arrest warrant for Sandra Rhoads. Within the previous month, Rhoads had been contacted by officers at the home. She later said she was " 'staying' " there and could be contacted there. A reliable informant had confirmed that Rhoads was living with Risse, and just prior to the arrest, officers verified by phone that Rhoads was present in the home. To the contrary, officers knew that Rhoads maintained another address in town that she had given at the time of an earlier arrest, where the utilities were in her name and where she received her mail. However, they had not been able to contact her at this other address before the arrest. (*Id.* at pp. 214–217.)

The Eighth Circuit Court of Appeals upheld the lower court's ruling, finding that the officers' belief that Rhoads resided with Risse was reasonable

as a matter of law: "In so holding, we reject Risse's contention that, because the officers knew, or should have known, that Rhoads maintained a permanent residence [elsewhere], they could not have reasonably believed that Rhoads resided [with Risse]. We have found no authority to support Risse's implicit assumption that a person can have only one residence for Fourth Amendment purposes. Rather, when evaluating Risse's expectation of privacy in his home, we are guided by the principle that, so long as Rhoads possesses common authority over, or some other significant relationship to, [Risse's] residence, [citation], that dwelling 'can certainly be considered [her] "home" for Fourth Amendment purposes, even if the premises are owned by a third party and others are living there, and even if [Rhoads] concurrently maintains a residence elsewhere as well.' " (*U.S. v. Risse, supra,* 83 F.3d at p. 217.)

To permit a probationer to evade supervision by giving one address at the time of being placed on probation and living elsewhere seems illogical, just as illogical as permitting a probationer to simply move about without fear that the residential search condition will ever be exercised. Nor does it seem appropriate to require an officer to eliminate all other possible residences as long as the belief with respect to the residence in question is reasonable. Indeed, here, had Keener investigated the Magnolia residence as a possible current residence for Dellagana, the results would only have confirmed his belief that she was, at that time, residing on Capstone.

In *People v. Downey*, *supra*, 198 Cal.App.4th at page 662, the court upheld the trial court's conclusion that the officers had an objectively reasonable belief that the probationer lived in the residence. Appellant contends that *Downey* supports his position because, in that case, there was more substantial evidence to support the officers' belief. There, the officers

7

searched several databases and called various agencies. As a result, they knew that the probationer had given several different addresses but that the most recent one, as reflected by utility bills, was the residence in question. They were also told that, though another individual was currently on the lease, others were living in the residence as well. (*Id.* at pp. 655–656.) We disagree that the factual distinction is meaningful under the standard of substantial evidence.

Appellant's reliance on *People v. Tidalgo* (1981) 123 Cal.App.3d 301 is unavailing. There, officers had conflicting information as to whether the defendant lived at the residence in question. (*Id.* at pp. 303–306.) Applying the same standard of review that we employ here, the court simply upheld the trial court's finding that the officer's belief *was not* reasonable. (*Id.* at p. 308.) We conclude that there was substantial evidence to support the trial court's finding here that the officer's belief that Dellagana resided at Capstone *was* reasonable.

We conclude the magistrate properly denied the motion to suppress at the preliminary hearing.

DISPOSITION

The judgment is affirmed.

_____

Reardon, J.*

WE CONCUR:


_____

Needham, Acting P. J.


_____

Burns, J.


A157243


---

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9